(No. 12983.—Judgment affirmed.)

THE PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Appellee, *vs.* WILLIAM RECKTENWALD *et al.* Appellants.

*Opinion filed December 17, 1919.*

1. ·EMINENT DOMAIN—*what is sufficient effort to agree on compensation to joint owners before filing petition.* A letter from a corporation to one of the joint owners of property showing that it had been ordered by the Utilities Commission to take the property and offering a cash price at a certain rate per acre for the whole title is in substance an offer to the owners of the tract and is a sufficient effort on the part of the petitioner to agree on compensation before filing its petition though no reply was made to the letter.

2. SAME—*when right of corporation to exercise power of eminent domain depends on Public Utilities act.* The general Corporation act does not confer the right to acquire private property by the exercise of the power of eminent domain but the existence of the right in a corporation organized under said act depends upon provisions of the Public Utilities act.

3. SAME—*Public Utilities Commission may authorize the exercise of power of eminent domain.* Under the Public Utilities act the Public Utilities Commission has the implied power to authorize the exercise of the power of eminent domain by a public utility corporation which otherwise does not have that power, where the exercise of said power is necessary to enable the corporation to obey a proper order of the commission. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609, followed.)

4. CONSTITUTIONAL LAW—*effect of constitutional provision that an act must embrace one subject expressed in its title.* Under the constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, those provisions of an act which are not fairly embraced in the title are void, and where different subjects are expressed in the title the whole act is void.

5. SAME—*what provisions may be included in general subject of act.* An act having a single general subject indicated in the title satisfies the constitutional requirement and may contain any number of provisions, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject by providing the means for carrying out the general object.

6. SAME—*sections 50 and 59 of Public Utilities act do not contain provisions not embraced in title of act.* Section 50 of the Pub-

lic Utilities act, providing that the commission may require a public utility to make changes in its property or erect new structures to promote public welfare, and section 59, providing for the exercise of the power of eminent domain whenever necessary in such cases, do not violate the constitutional provision that an act shall have but one subject which shall be expressed in its title, as said provisions are germane to the expressed subject of the act and necessary to carry out its purpose.

APPEAL from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding.

E. V. ORVIS, (R. J. DADY, of counsel,) for appellants.

ISHAM, LINCOLN & BEALE, (WILLIAM A. MORROW, and CYRUS H. ADAMS, JR., of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the Public Service Company of Northern Illinois, filed in the county court of Lake county its petition setting forth that it was a corporation organized under the act of 1872 entitled "An act concerning corporations," to manufacture, produce, distribute and sell gas and electricity, to distribute water and to distribute heat, and was a public utility within the meaning of the act entitled "An act to provide for the regulation of public utilities;" (Laws of 1913, p. 459;) that the Public Utilities Commission, after hearing upon complaint, entered an order finding that the construction, operation and maintenance of an extension of petitioner's electric transmission line ought to be made and was necessary to promote the convenience of the public and to secure adequate service or facilities, and directing the petitioner to construct, operate and maintain such extension from its sub-station No. 82 in the city of Evanston northwesterly and in general along the eastern side of and adjoining the existing right of way of the Chicago and Northwestern Railway Company to a point specified in the petition; that said transmission line would consist first of

a single row, and later, when conditions might warrant, a double row of steel towers supporting high tension wires, and that it was unable to agree with the various owners and persons interested in the tracts of land therein described as to the amount of compensation to be paid them for the taking and use thereof, and the petition prayed the court to cause such compensation to be ascertained according to law. Among the tracts of land described in the petition was "a strip of land eighty-five (85) feet wide east of and immediately adjoining the right of way of the Chicago and Northwestern Railway Company, in and through the south half of the northeast quarter of the northeast quarter of section thirty-four (34), township forty-three (43), north, range twelve (12), east of the third principal meridian, in Lake county, Illinois," and the appellants, William Recktenwald and Charlotte Recktenwald, were named as owners. The appellants entered their special appearance, and, alleging that they were the owners in fee simple of the tract of land, moved the court to dismiss the petition. After a hearing the motion was denied, and appellants then entered their general appearance and filed a cross-petition alleging damage to land not taken and engaged in a trial, which resulted in a verdict fixing the compensation. The appellants made a motion in arrest of judgment, which was denied and judgment was entered, from which this appeal was prosecuted.

Nine grounds of the motion to dismiss were stated therein, but those which are now relied upon by the appellants are, that the petitioner had not made an effort to agree with the appellants upon the compensation to be paid to them before filing the petition, and that the petitioner had no right to exercise the power of eminent domain.

The tract of land was owned jointly by the appellants, and the petitioner, by a letter addressed to the appellant William Recktenwald enclosing a copy of the order of the Public Utilities Commission and a description of the prop-

erty, offered him in cash at the rate of $350 per acre. No reply was made to the letter and there was a sufficient effort on the part of the petitioner to agree with William Recktenwald. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage*, 286 Ill. 213.) The appellants were joint owners of the land and the offer was for the whole title, perhaps in the belief that the interest of Charlotte Recktenwald was an inchoate right of dower. The offer was, in substance, to the owners of the tract, but in any view of the matter, if the petitioner could not agree with William Recktenwald for his undivided interest no further attempt to negotiate was necessary.

The principal argument in support of the errors assigned is that the petitioner had no right to exercise the power of eminent domain, and this is based upon the following propositions: "(1) That the act under which the petitioner was organized did not confer the right; (2) that sections 50 and 59 of the act providing for the regulation of public utilities are obnoxious to and in contravention of section 13 of article 4 of the constitution, which provides that 'no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title;' (3) that the provision of section 59 for the exercise of the power of eminent domain is not expressed in or covered by the title of the act, or if so expressed, the title embraces more than one subject; (4) if the provisions of sections 50 and 59 are expressed in the title they violate the constitution by delegating to the Public Utilities Commission the power to delegate to a public utility the right to exercise the power of eminent domain; (5) if those sections are constitutional they do not confer upon corporations created prior to the passage of the act the right to exercise the power of eminent domain but simply regulate the exercise of such power by a corporation already having it."

The general Corporation act, under which the appellee is organized, does not confer the right to acquire private

property by the exercise of the power of eminent domain. (*Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295.) The existence of the right depends upon the provisions and validity of the act for the regulation of public utilities.

Aside from the question of the constitutionality of sections 50 and 59, which was not raised or considered in the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609, the questions whether the Public Utilities Commission has power to require a public utility to do some act which will require the exercise of the power of eminent domain, and whether the Public Utilities act simply regulates the exercise of the power by a corporation already having it, were settled in that case. The Chicago, Burlington and Quincy Railroad Company had been invested with power to take private property by eminent domain for the original construction of its railroad, but the power had been exhausted by the original location and no longer existed. If the company had power to re-locate its railroad and to take private property for the re-location it was derived from the Public Utilities act under the order of the Public Utilities Commission. It was said that the General Assembly might lawfully delegate to the Public Utilities Commission the right and duty to exercise or compel the exercise of the power of eminent domain to secure the public safety, and the right and duty were necessarily implied, because if the petitioner had no right to take property for the proposed change it would be powerless to comply with the order, and the commission having been empowered to make the order, everything essential to require and assure compliance with it was necessarily included.

The constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, prohibits the passage of an act containing provisions not fairly embraced in the title and any such provisions are void, and it also prohibits the passage of an act relating to different subjects expressed in the title, in which case the

whole act is void. (*Milne* v. *People,* 224 Ill. 125; *Rouse* v. *Thompson,* 228 id. 522; *Sutter* v. *People's Gas Light and Coke Co.* 284 id. 634.) The general purpose of the constitutional provision, however, is accomplished when a law has but one general subject, which is fairly indicated by its title. The title is not required to be an index to the body of the act or as comprehensive in matters of detail, but if it fairly indicates the general subject and reasonably covers all the provisions of the act and is not calculated to mislead the General Assembly or the people it is a sufficient compliance with the constitutional requirement. Unless the act contains matters having no proper connection or relation to the title, or the title itself contains subjects having no proper relation to each other, the constitutional provision is not violated. An act having a single general subject indicated in the title may contain any number of provisions, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject, and may be considered in furtherance of such subject by providing for the method and means of carrying out the general object. *People* v. *Nelson,* 133 Ill. 565; *People* v. *McBride,* 234 id. 146; *Manaster* v. *Kioebge,* 257 id. 431; *Perkins* v. *Board of County Comrs.* 271 id. 449; *Sutter* v. *People's Gas Light and Coke Co. supra.*

It cannot be doubted that power may be conferred upon a corporation organized under authority of the General Assembly to serve the public by supplying the people with gas, electricity, heat and water, which can best be produced and distributed by such a corporation acting under State control, to take private property for the public uses of such corporation by the power of eminent domain. The question here is whether that has been accomplished by the act entitled "An act to provide for the regulation of public utilities." The regulation of such corporations performing a public service includes their control, direction and govern-

ment and subjecting them to rules and restrictions for their management or government in order that the public may be efficiently served on equal terms and for reasonable compensation with services and commodities furnished by the corporations. To that end it is within the general purview of the title to provide that if the commission, after hearing, shall find that the service is inadequate and that additions, extensions, repairs or improvements to or changes in the existing plant, equipment, apparatus, facilities or other physical property of any public utility ought reasonably to be made, or that a new structure or structures should be erected to promote the security or convenience of the public or in any other way to secure adequate service or facility, the commission may require the same to be made. That has been done by section 50 of the act and it is free from constitutional objection.

For the purpose of rendering the provision of section 50 effective and providing the method and means of requiring the improvement, changes or new structures, section 59 provides that when necessary for the construction of any alterations, additions, extensions or improvements ordered or authorized under section 50, any public utility may enter upon, take or damage private property in the manner provided for by the law of eminent domain. This is only a provision for making effective an order lawfully made, and comes within the established rule that any provision in furtherance of the title or to render the provisions of an act effective is not in violation of the constitutional restriction. Without the power of eminent domain a lawful order for securing the public safety and convenience would be an idle ceremony, because private property could not be taken and appropriated to the required use.

No reason is suggested why the act for the regulation of public utilities should be held to apply only to corporations organized after the passage of the act and none is apparent.

The act does not embrace more than one subject and that subject is expressed in the title. The court did not err in denying the motions to dismiss and in arrest of judgment.

The judgment is affirmed. *Judgment affirmed.*