THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Petitioner-Appellee, *v.*
KENNETH L. KARN *et al.,* Defendants-Appellants.

(No. 71-248;

Second District—January 22, 1973.

*Rehearing denied March 19, 1973.*

David Lincoln Ader, of Chicago, for appellants.

Walter K. Pyle, Assistant Attorney General, of Oakbrook, and Wayne Jensen, Special Counsel, of Elgin, both of Illinois State Toll Authority, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The Illinois State Toll Highway Authority (the Authority) brought an action on June 28, 1971 in the circuit court of Lee County to acquire by eminent domain certain parcels of real estate and a temporary drainage easement relating to an extension of the east-west route of the Northern Illinois Toll Highway from Aurora, Illinois, to Rock Falls, Illinois. Defendants moved to dismiss, and the Authority filed a motion for immediate vesting of title pursuant to the quick-take provision of the Eminent Domain Act. (Ill. Rev. Stat. 1969, ch. 47, par. 1, *et seq.*) After a hearing the trial court granted the Authority's quick-take motion and denied defendants' motion to dismiss.

Defendants appeal pursuant to Supreme Court Rule 307(a)(7). (Ill. Rev. Stat. 1971, ch. 110A, par. 307(a)(7).) The issues raised are: (1) Whether the debt limitation set by the Toll Highways Authority Act (Ill. Rev. Stat. 1969, ch. 121, par. 100—8(f)), was violated by the Authority; (2) whether the Authority's decision to proceed with the East-West Extension was made at a public meeting; (3) whether the proposed Extension is violative of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1002, *et seq.*), so as to nullify the Authority's right to condemn defendants' property; (4) whether the Authority attempted to agree on compensation prior to filing this action; and (5) whether the taking of land to provide public access to an otherwise land-locked parcel is a public use within the meaning of the Eminent Domain Act.

Before directing our attention to these issues it is appropriate to take up at this point defendants' motion, filed in this court just five days before the case was set for oral argument, requesting leave to file their reply brief *instanter*. The Authority objected, urging denial of the motion, pointing to defendants' failure to file their reply brief some four months prior thereto when it was due by extension of time, and to their delay in filing or seeking to file their reply brief until just before oral argument. We took defendants' motion and the Authority's objection thereto under advisement with the case.

Defendants' motion to file their reply brief is hereby allowed. However, we emphasize our action should not be construed as condoning defendants' disregard of Supreme Court Rule 343(a) (Ill. Rev. Stat. 1971, ch. 110A, par. 343(a)), and the order of this court extending the time for filing their reply brief. In view of the fact that defendants are repre-

sented by counsel, it was he who had the responsibility to comply with that rule and order; he is reprimanded for his failure to do so.

Defendants contend that when the Authority's petition to condemn was filed the Authority exceeded its indebtedness on June 1, 1967 by almost $35,000,000, and it therefore lost its power to condemn.[1]

■■ The Toll Highways Authority Act sets forth in Section 100—8 (Ill. Rev. Stat. 1967, ch. 121, par. 100—8), the general powers granted to the Authority. By paragraph (f) thereof the Authority is given the power:

> "To acquire, construct, relocate, operate, regulate and maintain a system of toll highways through and within the State of Illinois. However, the Authority does not have the power to acquire, operate, regulate or maintain any system of toll highways or toll bridges or portions of them (including but not limited to any system organized pursuant to Division 108 of Article 11 of the Illinois Municipal Code) in the event any of the following alternatives exists at the time the proposed acquisition, operation, regulation or maintenance of such system is to become effective:
>
> a) the principal or interest on bonds or other instruments evidencing indebtedness of the system are in default;
>
> b) the principal or interest on bonds or other instruments evidencing indebtedness of the system have been in default at any time during the 5 year period prior to the proposed acquisition;
>
> c) the system has outstanding indebtedness in excess of that outstanding on June 1, 1967."

It is significant that the first sentence includes the grant of power to "acquire, construct, relocate, operate, regulate and maintain" the toll highway system, while the second sentence negates the power to acquire, operate, regulate or maintain any system of toll highways in the event of the existence of the alternatives listed as a), b), and c) "at the time the proposed acquisition, operation, regulation or maintenance of such system is to become effective"; thus, conspicuously omitting the words, "construct" and "construction" (as well as "relocate" and "relocation" with which we are not concerned). The use of certain words in one instance

---

[1] The indebtedness of the Authority on June 1, 1967 was $419,657,000; on November 27, 1970, when the Authority authorized $135,000,000 in additional indebtedness in connection with the East-West Extension, its indebtedness was $319,570,000, over $100,000,000 less than the indebtedness on June 1, 1967; in January, 1971 the bonds authorized were sold increasing the debt to $454,570,000, almost $35,000,000 over the indebtedness on June 1, 1967.

by the legislature, and different words in another, indicate that different results were intended. (*Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 100.) Obviously, therefore, the second sentence of paragraph (f) was not intended to apply to construction of new toll highways.

Moreover, we agree with the trial court that by its references to the "system" in sub-paragraphs a), b), and c) of paragraph (f) the legislature intended to limit the acquisition of a system of toll roads and toll bridges (such as the Chicago Skyway). Since no "system" with outstanding indebtedness is being acquired, the debt limitation is not applicable. The cases cited by defendants are inapposite.

■■ Defendants further contend that the Authority's decision to proceed with the East-West Extension was not made at a public meeting as required by law. Section 2.02(b) of the Meetings of Public Agencies Act provides as follows:

> "(b) Public notice shall be given by posting a copy of the notice at the principal office of the body holding the meeting or, if no such office exists, at the building in which the meeting is to be held. The body shall supply copies of the notice of its regular meetings, and of the notice of any special, rescheduled or reconvened meeting, to any local newspaper of general circulation or any local radio or television station that has filed an annual request for such notice. Any such news media shall also be given the same notice of all special rescheduled or reconvened meetings in the same manner as is given to members of the body provided such news medium has given the public body an address within the territorial jurisdiction of the public body at which such notice may be given." Ill. Rev. Stat. 1969, ch. 102, par. 42.02(b).

It appears from the record that by resolution adopted September 24, 1970 the Authority's board of directors determined that it is in the public interest to construct the East-West Extension of the Northern Illinois Toll Highway. There is no evidence that notice was given in compliance with Section 2.02(b) of the Act by the Authority.

However, at a subsequent meeting held on November 27, 1970 the Authority's board of directors adopted a resolution that it "has heretofore determined and does hereby determine" that it is in the public interest to construct said extension and authorizing, in view of the revised estimates of costs, the issuance of bonds in the principal sum of $135,000,-000 to pay the cost of construction and authorizing preparation of plans and engineering for its construction. The petitioner posted a copy of the notice of the November 27th meeting on the main bulletin board of its principal office in Oak Brook, Illinois, and supplied copies thereof to

all local newspapers of general circulation and to other news media which had requested it.[2] Notice of the November 27th meeting was given in compliance within the meaning of the Public Agencies Act and there was no violation of any federally protected constitutional right. (See *Bradford Township v. Illinois State Toll Highway Auth.*, 463 F.2nd 537, 540, decided June 22, 1972.) There is nothing in this record to suggest that the meeting of November 27, 1970, of which appropriate notice was given, was perfunctory or a sham. On the contrary, the resolution adopted at that time indicates that the proposed East-West Extension was fully considered in all aspects. We hold that the resolution adopted by the Authority's board of directors on November 27 is valid.[3]

■■ The next contentions urged by defendants relate to the Authority's alleged disregard or violation of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1002, *et seq.*) They argue that the East-West Extension might tend to contribute to air pollution; that petitioner was required by Section 47(c) of that Act to submit plans and specifications and cost estimates to the Environmental Protection Agency; that the Authority was required by Section 2(a) (iv) "to minimize environmental damage"; that having failed to comply with such requirements, the Authority was not entitled to exercise the power to condemn defendants' land. Section 47(c) of that Act provides:

> "Each state agency or institution shall submit to the Environmental Protection Agency complete plans, specifications and cost estimates for any proposed installation or facility that may cause a violation of this Act or of regulations adopted thereunder by December 1 of each year." Ill. Rev. Stat. 1971, ch. 111½, par. 1047(c).

---

[2] It is interesting to note that Public Law 77-2194, approved August 8, 1972, amended the Toll Highways Authority Act by adding Section 14.2 which, effective October 1, 1972, requires the Authority to hold a public hearing in a county through which any proposed toll highway is to be constructed and notice of such hearing by advertisement on three successive days, 15 or more days prior thereto, in a daily newspaper published in and of general circulation in such county, or if there be no such newspaper then in a daily newspaper of general daily circulation in the county.

[3] In their reply brief defendants for the first time argue that a resolution adopted by the Authority's board of directors at a meeting on December 16, 1970 was illegal and void because no proof was introduced of notice of this meeting or that it was a public meeting. That resolution merely approved a construction schedule as to various sections and expressed the Authority's intent to open the extension for traffic by October, 1972, and complete its construction by August, 1973. In view of the fact that this contention was raised for the first time in defendants' reply brief, we decline to consider it.

Even if the East-West Extension of the Northern Illinois Toll Highway be regarded as a "facility" within the meaning of that section, and even if it be assumed that such facility "may cause a violation" of the Act, the submission of plans and specifications is not a condition precedent of construction. This is clear from the requirement that plans and specifications be submitted "by December 1 of each year". In the case at bar petitioner's resolution authorizing plans and engineering for the Extension was adopted on November 27, 1970 (and December 16, 1970; see Footnote 3), and the Authority's condemnation suit was filed in June, 1971.

■■ The trial court heard extensive testimony as to the likelihood of air pollution and environmental damage which the toll road might cause and found that the East-West Extension is "not in violation of * * * the Illinois Environmental Control Act * * *." It is obvious that it is not the toll road or its construction which would cause air pollution; it is the operation of certain types of vehicles using the road which may do so, unless pollution from such vehicles is eliminated or greatly reduced by other state or federal laws or regulations. (See 45 C.F.R., sec. 1201.21; 42 U.S.C., sec. 1857f—1.) If defendants' arguments were valid, the construction of virtually all new roads would have to be barred because vehicles using the road emit certain gases and other contaminants harmful to the environment in general and to agriculture, in particular. The evidence did not establish that the East-West Extension was "capable of causing or contributing to air pollution" and there was no requirement, therefore, for the Authority to obtain a permit from the Pollution Control Agency pursuant to Section 9(b) of the Environmental Protection Act.

Section 2(a) (iv) of the Environmental Protection Act states that it is "the obligation of the State Government to manage its own activities so as to minimize environmental damage." Defendants complain that the Authority disregarded this obligation because, while it caused a study to be made of traffic revenue, engineering and design, it never ordered any environmental or ecological study to be made. Defendants cite these environmental factors which they contend were disregarded: (1) The route planned for the East-West Extension is not a straight route; (2) soil studies made were based on a minimum number of test borings; and (3) inadequate drainage study and provision.

■■ The selection of the route of a toll highway and the plans and specifications thereof have been delegated by law exclusively to the Authority and (absent a clear abuse of discretion) are not subject to judicial review. (Ill. Rev. Stat. 1969, ch. 121, par. 100—32; see *People v. Toll Highway Com.*, 3 Ill.2d 218, 232, 233.) There has been no showing by defendants of any abuse of discretion by the Authority which would

warrant interfering with its determination as to the location of the proposed East-West Extension or the adequacy of soil borings or drainage provisions.

Moreover, the trial court here found that "the Authority has done whatever it can to minimize environmental damage, in their plans anyway, from the drainage problem." From an examination of the record we are unable to say that the Authority did not comply with its obligation to "manage its own activities so as to minimize environmental damage."

The next question we consider is whether the Authority made a good faith attempt to agree on compensation. The defendants received a letter from the Authority with a full legal description of the parcels to be taken, and a drawing outlining those parcels, offering $7,521.79 therefor, and requesting acceptance or rejection within ten days. Defendants did not accept that offer nor did they make a counter-offer. Prior to the filing of the condemnation suit, a Mr. Sarik from the Attorney General's office and the appraiser who made the appraisal on which the offer was based called on the defendants and explained that the reference in the letter to "15.12 acres" as to the primary parcel to be taken was a typographical error, and should be "5.12 acres". There was no error in the legal description. Defendant Karns stated in open court that he was unwilling to sell the land for the amount offered.

■■ A written offer by a condemnor requesting acceptance within a specified period is sufficient attempt to agree, even if no further negotiations are held. (*School Trustees v. Batchelder*, 7 Ill.2d 178, 182.) The trial court held, after considering the evidence, that the Authority made a good faith attempt to agree prior to filing this suit.

Finally, defendants contend that one of the parcels being taken is intended solely for an access road to the land of a neighboring farmer and therefore the power of eminent domain cannot be exercised by the Authority for such purposes. The record shows that the neighbor's landlocked tract had previously been served by a township road to the east of defendants' property, and that the proposed access road would connect with and restore access between the land-locked tract and that township road.

■■ The courts have consistently held that it is the right of the public to use a road which determines its use, not its actual exercise of that right. In *Department of Public Works & Bldgs. v. Koch*, 62 Ill.App.2d 182, where a comparable situation was present, the court in holding that providing a roadway across part of property to the newly isolated tract was a public use stated:

"* * * It is true that the proposed extension will service only that part of Harris's which would otherwise be isolated and would

presently dead end in a cornfield. This may well diminish its use for the present as a public thoroughfare. This observation is not, however, controlling. It is the right in the public to use, not its exercise of the right, that constitutes a road a public highway." 62 Ill.App.2d at 185.

In *Town of Kingston v. Anderson*, 300 Ill. 577, cited by defendants, the court emphasized that the entire record plainly indicated that the purpose there was to lay out a "private road" for the sole use and benefit of the petitioner and of no public use or benefit whatever. That case is inapplicable.

Section 8(a) of the Toll Highways Authority Act grants to the Authority the general power to acquire real property. Section 9(b) grants the power to "acquire, hold and use real * * * property, including rights, rights-of-way, * * * easements and other interests in land as it may desire, necessary or convenient for its authorized purposes * * * and to take title thereto * * . *." Ill. Rev. Stat. 1969, ch. 121, par. 100—9(b).

Section 1 of the Act states this legislative declaration:

"It is hereby declared, as a matter of legislative determination, that in order to promote the public welfare, and to facilitate vehicular traffic by providing convenient, safe, modern and limited access highways designed for the accommodation of the needs of the traveling public through and within the State of Illinois, that it is necessary in the public interest to provide for the construction, operation, regulation and maintenance of a toll highway or a system of toll highways, incorporating therein the benefits of advanced engineering skill, design, experience and safety factors, to eliminate existing traffic hazards, and to prevent automotive injuries and fatalities, and to create The Illinois State Toll Highway Authority, as an instrumentality and administrative agency of the State of Illinois, and to confer upon and vest in said Authority all powers necessary or appropriate to enable said Authority to carry out the foregoing stated legislative purpose and determination." Ill. Rev. Stat. 1969, ch. 121, par. 100—1.

■■ It seems obvious to us that in order to carry out the legislative purpose and proceed with the East-West Extension it may become necessary for the Authority, as it did in this case, to provide access to a land-locked tract and then, in order to do so, to seek title by condemnation to that parcel of defendants' land which would provide such access since the public right to use the access road, whether it exercises it or not, would constitute a public use. The trial court was justified in finding and concluding that the acquisition of the parcel in question, as well as the other parcels and the drainage easement, is necessary for the con-

struction of the East-West Extension, and the purpose to which it will be put is a public purpose.

Therefore, the motion to file defendants' reply brief is allowed; and the judgment in the trial court affirmed.

Motion allowed; judgment affirmed.

GUILD and T. MORAN, JJ., concur.