THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* EDWARD R. WALKER *et al.*, Defendants-Appellees.

Third District   No. 79-306

Opinion filed February 1, 1980.

William J. Scott, Attorney General, of Springfield (John A. Hayner, Special Assistant Attorney General, and Roy E. Frazier, Jr., Assistant Attorney General, of counsel), for appellant.

Gary M. Neville and Roger B. Gomien, both of Gomien, Masching & Neville, of Dwight, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the Department of Transportation (Department) of the State of Illinois from a judgment of the Grundy County Circuit Court which dismissed an action brought by the Department for the condemnation of property. A motion to dismiss the condemnation petition was made by defendants-owners of the property under consideration on the ground that the Department had failed to make a good faith bona fide attempt to agree with the owners upon a price for the property before filing the condemnation petition.

Under section 2 of the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 2), it is provided that the taking of property by eminent domain is sanctioned where "the compensation to be paid * * * cannot be agreed upon by the parties interested * * *." Consequently, it is deemed to be a condition precedent to the exercise of the power that the authority, which seeks to appropriate the property through eminent domain proceedings, should first attempt to agree with the owners before filing a petition for condemnation. (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 434, 143 N.E.2d 40; *Dept. of Transportation v. Marsh* (1977), 54 Ill. App. 3d 890, 891, 368 N.E.2d 172.) The acquiring authority must make a bona fide attempt to agree with the owners on the terms of compensation. (*Board of School Trustees v. Boram* (1962), 26 Ill. 2d 167, 170, 186 N.E.2d 275; *Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.* (1975), 29 Ill. App. 3d 145, 148, 329 N.E.2d 344.) The attempt at agreement must be made in good faith by the acquiring authority. *Village of Deerfield v. Rapka* (1973), 54 Ill. 2d 217, 224, 296 N.E.2d 336; *Illinois State Toll Highway Authority v. Karn* (1973), 9 Ill. App. 3d 784, 791, 293 N.E.2d 162.

The property under consideration in the instant case measures 5,040 square feet, of which 1,680 square feet are occupied by a commercial building. The remainder is used as a parking lot. The property is owned by Edward R. Walker and Louise B. Walker and Robert H. Black. At the time of the proceedings referred to in the instant case, the premises were being leased to Thomas Talty, d/b/a Talty Chevrolet, and Richard Mompers. The parking lot was used by the Chevrolet dealership and the building was used as a motorcycle repair shop. The Department of Transportation had employed Fred R. Tadrowski, an independent appraiser, to appraise the building. He valued the property under a "market approach" at $4 per square foot, or a total of $20,160, and under a "cost approach" at $21,840. His concluding appraisal was $20,500. This appraisal was submitted to the Department on July 14, 1975, and approved by the Department two days later.

The Department assigned Richard J. Castelli, one of its right-of-way agents, to negotiate for purchase of the property. On July 18, 1975, Castelli telephoned Mrs. Walker to set up an appointment. The following evening he met with Mrs. Walker and Robert Black. He presented to them a written offer to purchase for $20,500 and, also, gave them some written material which explained that the offer to purchase was based upon an appraisal. Mrs. Walker and Mr. Black told Castelli they thought the offer was low and they wanted time to consider it. On August 27, 1975, Castelli telephoned Mrs. Walker. She told him she did not wish to discuss the parcel of land involved in this case (parcel 62) until the Department had made an offer on another parcel owned by the parties (parcel 61), located across the street from the land involved in the instant proceeding, which the Department was also seeking to acquire. She also told Castelli that she wanted to talk to her attorney. Castelli called Mrs. Walker on September 9, 1975, and again on September 18. On both occasions, Mrs. Walker told him that she did not wish to discuss parcel 62 until an offer had been made for parcel 61. She also informed him that he was thenceforth to deal with her attorney, David Root. Castelli called Mrs. Walker on January 12, 1976, and told her that he had an offer to present on parcel 61, but would need a letter from the owners authorizing their attorney to act on their behalf. The letter of authorization was written the next day.

Castelli called attorney Paul Root, a partner of David Root, on January 16, 1976, and made an appointment for January 27. On that date, Castelli met with Root, but Root declined to discuss the case before further consulting with his clients. Castelli called Root on February 18, and Root told him that the owners were having the property appraised. On March 19, Castelli again called Root and advised him that if he did not have an answer by the end of the month, a "final offer letter" would be

sent. On April 15, 1976, Castelli mailed a "final offer letter" to the owners, once more offering them the original amount specified of $20,500. The letter stated that the recipients had five days to answer, after which time the matter would be turned over to the Attorney General's office for condemnation. The five-day period passed without response and, according to the Department's brief, the matter was turned over to the Attorney General's office.

This was not, however, the end of the negotiations. Castelli testified that negotiations between Castelli and Root continued past April 15 and were not terminated until May 11, 1976. Castelli kept records of these negotiations and referred to these in giving his testimony. On May 4, 1976, Root told Castelli that the owners' appraisers valued the land at $6 per square foot for the parcel, which would result in a total price of $30,240. Castelli asked Root if this figure was the lowest he would settle on and told him that he would relay his counteroffer to "our office." On May 5, 1976, Paul Root called Castelli and he and Root discussed a figure of $25,500. On May 11, 1976, Castelli called Root. Root said the owners wanted an additional $10,000, or a total of $30,500, but would settle for $7,500, which would bring the total price to $28,000. Castelli said "I told him I would bring this counter-offer to my superiors." That was the last communication between Castelli and Root. On August 30, 1976, some 3½ months later, the petition for condemnation was filed.

At the first meeting between Mr. Castelli and Mrs. Walker and Mr. Black, on July 19, 1975, Castelli produced a letter of introduction which stated, *inter alia*:

> "It is the policy of the State of Illinois to engage competent appraisers to appraise the right-of-way to be acquired in order to arrive at its fair market value. Mr. Castelli is authorized to offer you the full amount of the approved value shown on the attached Summary of Land Acquisition and Offer to Purchase form."

While it is possible to read this as a limitation upon Mr. Castelli's authority, the statement is ambiguous. It does not explicitly inform the owners that Mr. Castelli would be exceeding his authority by making a higher offer or by conveying a counteroffer to his superiors. In fact, Mr. Castelli was authorized to negotiate for a higher price, or at least to convey counteroffers to his superiors, as he clearly led the owners to believe. Paragraph 3.05—9 of the Land Acquisition Policies and Procedures Manual of the Department of Transportation states:

> "Division policy provides that the first time an offer is made to an owner * * * the Division of Highways negotiator does not start low, with a discounted offer, nor does he start high, but he begins and ends with the one figure that has been ascertained through

independent appraisal and appraisal review by the local State right-of-way office.

Under the one offer method the negotiator must, * * * without the advantage of increasing his offer, convince the owner of the fairness of the State's offer * * *.

However, the State's one offer system is not rigidly inflexible. Should additional items of value be brought to light or other oversights be noted during the course of negotiations, the negotiator should report the same to his office for consideration and possible reappraisal. All counter-offers should also be reported. It should also be noted that the District or Regional Engineer, at his discretion, may increase the offer over and above the established fair market value under the administrative settlement procedures of Paragraph 3.01—2 of this Manual."

It is obvious that Castelli not only had apparent authority to convey counteroffers made by the owners, he had actual authority to do so.

● ■ ■ We recognize that an acquiring authority may make a final letter offering. If this offer is not responded to, the acquiring authority has met its obligations under section 2 of the Eminent Domain Act. (*Village of Deerfield v. Rapka* (1973), 54 Ill. 2d 217, 225, 296 N.E.2d 336; *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 527, 182 N.E.2d 169; *School Trustees v. Batchelder* (1955), 7 Ill. 2d 178, 182, 130 N.E.2d 175; *Public Service Co. v. Recktenwald* (1919), 290 Ill. 314, 316-17, 125 N.E. 271.) The record in the instant case, however, indicates that this procedure was not specifically and finally adopted. Castelli revived the negotiations by informing the owners' attorney that their counteroffers would be forwarded to his principals. On May 5, Castelli and Root "discussed a figure of $25,500," although no new offer was made by either side at that time. Negotiations, as we have noted, continued well into May of 1976. The latest offers actually made in the course of these negotiations were those of attorney Root acting for the owners. There was no response of any kind to these counteroffers by the Department of Transportation.

■ ■ We have not been referred to any case, nor have we found any such precedent, in which a condemnation petition was held properly dismissed for lack of a bona fide, good faith attempt at agreement. We believe, however, that an attempt at agreement must be both bona fide and made in good faith by the acquiring authority before the condemnation proceedings may be initiated. The failure of the Department to respond to the owners' counteroffers, despite the assurances of its agent that these counteroffers were being taken under consideration, supports the conclusion of the trial court that there was lack of good faith on the part of the Department of Transportation in these negotiations.

On the basis of the record in this cause, therefore, we believe that the trial court was justified in so finding and that the order of the Circuit Court of Grundy County should be, and is, affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.