THE COUNTY OF WABASH, Petitioner-Appellee, v. CLARENCE E. PARTEE *et al.*, Respondents-Appellants.

Fifth District   No. 5—91—0739

Opinion filed February 11, 1993.

Robert Michael Drone, of Conger & Elliott, P.C., of Carmi, and Clarence E. Partee, of Mt. Carmel, *pro se*, for appellants.

Thomas E. Price, State's Attorney, of Mt. Carmel (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

David K. Frankland, of Albion, guardian *ad litem*.

JUSTICE LEWIS delivered the opinion of the court:

Respondents appeal from the trial court decision denying their motion to dismiss and traverse the complaint for condemnation filed by petitioner, Wabash County. Respondents do not appeal from the jury verdict finding compensation. For reasons stated below, we affirm the trial court's decision.

The essential facts of this case begin with a former lawsuit involving the same piece of property. In the 1970's the City of Mount Carmel sought to condemn land outside of its city limits for highway purposes, so that traffic going to Wabash Valley College could exit Highways 15 and 1 and travel directly to the college, thus bypassing the congested downtown area of Mount Carmel. The supreme court affirmed the trial court's decision dismissing the complaint in the former suit. (See *City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 385 N.E.2d 687.) On November 21, 1988, the City of Mount Carmel and the County of Wabash entered into an intergovernmental agreement whereby the county and city exchanged jurisdiction of certain property in order that the county could proceed to complete a county highway. The property involved in the intergovernmental agreement is the same property that was involved in the former lawsuit between Mount Carmel and the respondents.

After entering into the agreement with Mount Carmel, Wabash County officials worked with the Department of Transportation to try to negotiate with Clarence Partee, one of the respondents herein, who possessed a life estate in the property. The owners of the remainder interest were not contacted by the county or the Department of Transportation with any inquiries or offers. The attempts to obtain the property through negotiation were not successful.

On July 11, 1989, the County of Wabash filed its complaint for condemnation, which alleged that the county was authorized to obtain fee simple title to the property through condemnation pursuant to section 5—801 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, par. 5—801). The complaint set forth a description of the property to be taken and the names of the property owners, both the life tenant and the remaindermen. The complaint also alleged that the county's attempts to reach an agreement with the owner as to compensation had failed. The respondents filed their traverse and motion to dismiss on August 11, 1989, alleging several grounds for dismissal.

On December 18, 1989, the county adopted a resolution, which essentially stated that it was necessary for the county to complete Highway 1, which was the subject of the complaint for condemnation. The resolution further stated that the completion of Highway 1 would make travel within the county more direct and alleviate traffic congestion, that the county had been unable to reach an agreement with the owners as to compensation, that the condemnation of the property was necessary and in the public interest, and that the county was by the resolution ratifying and confirming all prior actions regarding condemnation of the subject property.

At the hearing on the traverse and motion to dismiss, the intergovernmental agreement and the December 18, 1989, resolution were admitted into evidence. The county also introduced evidence regarding the county's attempts to purchase the property for the highway. The superintendent of highways testified that Highway 1 was incomplete for approximately 1,500 feet in the middle of the highway, at the point where the highway runs through the respondents' property. He also testified that the highway dead-ends on the south side of respondents' property, that the county was interested in completing the highway through respondents' property, that the county had contemplated extending the highway for at least 20 years, and that no part of the strip of land the county sought to condemn was within the corporate limits of the city.

Clarence Partee, the owner of the life estate, testified that the city had first tried to purchase the property in 1973 but that the city would not agree to his offered price of over $12,000 per acre. He further testified that after the Illinois Supreme Court disposed of the city's condemnation lawsuit, neither the city nor the county had attempted to try to acquire the land for approximately the next 10 years.

The trial court ruled that the county had established its *prima facie* burden of proof as to both the facts of public use and legal right to take the property by condemnation, that the county's suit was not barred by *res judicata* or collateral estoppel, that necessity and use were sufficiently established, and that the amount of property to be condemned was not excessive. Subsequently, the court ruled on respondents' motion to reconsider. The court found that the county had made a *bona fide* attempt to agree, that the City of Mount Carmel was not the real party in interest, and that the county had the statutory authority to add roads in this situation.

The first issue presented for review is whether the county is barred by the doctrine of *res judicata* from condemning the respondents' property as a result of the supreme court's ruling in *City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 385 N.E.2d 687. The supreme court held in that case that section 11—61—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—61—1) allows cities to condemn property for streets in unincorporated areas if, and only if, the property to be taken is substantially contiguous and adjacent to the city. Since the property at issue was not substantially adjacent and contiguous to the incorporated parts of the city, the supreme court held that condemnation of the property could not be permitted under that section of the Municipal Code.

The doctrine of *res judicata* "provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." (*Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 649, 545 N.E.2d 481, 488.) There are three essential elements of *res judicata*. First, the parties or their privies must be the same in the two suits. Second, the causes of action and issues involved in both suits must be the same. Third, there must have been a final judgment on the merits in the former suit to act as a bar to the latter suit. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d at 650, 545 N.E.2d at 489.

■ There is only one element of *res judicata* found in this case, that is, there was a final judgment on the merits in the *Mount Carmel* case. Respondents urge this court to find that the other elements of the doctrine are present, but we do not find respondents' arguments convincing on any point.

Respondents contend that the county and city are in privity because of the intergovernmental contract between the parties and because both governmental units have citizens in common. If this argument were extrapolated, the State of Illinois would be bound by the original *Mount Carmel* case if the State made the college into a university and desired to connect the roads over the land in question. In fact, if respondents' argument were accepted, then the United States could be estopped from completing the road, if common citizenship and intergovernmental agreements bound the parties to prior court rulings involving only one party. If this court accepted respondents' extension and distortion of the concept of privity, the consequences could be horrendous, when one considers the number of intergovernmental agreements among cities, counties, States and the Federal government. It would be absurd to hold that governmental units forfeit their powers and assume all of the limitations of other governmental bodies simply because they enter into intergovernmental-cooperation agreements and have some citizenship in common.

The issue in the *Mount Carmel* case was whether the city had the right to condemn respondents' land which was not contiguous to the city under the applicable section of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—1—1 *et seq.*) and, particularly, section 11—61—1 (Ill. Rev. Stat. 1975, ch. 24, par. 11—61—1). The controlling issue in this lawsuit is whether the County of Wabash is authorized to condemn respondents' land under section 5—801 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, par. 5—801). The parties and the issues are simply not the same.

*Res judicata* is conclusive as to every issue raised in the first action and also as to any other issue which might have been raised. In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the first action. (*County of Cook v. Illinois Local Labor Relations Board* (1991), 214 Ill. App. 3d 979, 574 N.E.2d 754.) In the case at bar, 10 years have passed. Circumstances have changed. A distinct and separate government entity is seeking to condemn property under an entirely different legislative enactment. In *City of Mount Carmel,* the supreme court did not hold that the city could not condemn property for highway purposes, rather the court held that the city could not condemn property that was outside of its jurisdiction and which was not adjacent to the city limits. In this case, neither the jurisdiction of the city nor the location of the property in relation to the city is at issue. The property clearly lies

within the jurisdiction of the county. The only commonality between this case and the *Mount Carmel* case is the respondents and the property that is in dispute. It is difficult to even imagine how the doctrine of *res judicata* could apply in this case.

■ The respondents' next argument is that the county lacked the necessary statutory authority to proceed with the condemnation. The respondents rightly argue that grants of authority to local governments under legislative enactments are to be strictly construed (this is known as Dillon's Rule). (*Connelly v. County of Clark* (1973), 16 Ill. App. 3d 947, 307 N.E.2d 128.) However, the court in *Connelly* points out that "Dillon's Rule of strictly construing legislative grants of authority to local governmental units has been abrogated by section 10 of Article VII of the 1970 Constitution when local governments voluntarily cooperate to share services on a partnership or joint venture basis." (*Connelly v. County of Clark*, 16 Ill. App. 3d at 951, 307 N.E.2d at 131.) Specifically, section 10 of article VII of the 1970 Constitution provides that units of local government may contract with each other and with the State to obtain or share services and to exercise, combine or transfer any power or function if not otherwise prohibited by law. Ill. Const. 1970, art. VII, §10.

The constitutional grant to local governments of the authority to contract with each other is supported by the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1989, ch. 127, par. 741 *et seq.*). Section 3 provides that local governmental units can exercise powers jointly to the extent not otherwise prohibited by law (Ill. Rev. Stat. 1989, ch. 127, par. 743), and section 5 provides that local governments may contract with each other to do anything that any of the local governments are authorized by law to do (Ill. Rev. Stat. 1989, ch. 127, par. 745).

The Illinois Constitution, when read together with the Intergovernmental Cooperation Act, gives the City of Mount Carmel and the County of Wabash the authority to enter into a cooperative agreement. The agreement is valid so long as either the city or the county has the right to undertake the task required under the agreement. Here, the county had the legal authority under the Illinois Highway Code to condemn property in the county for the purpose of providing highways for the public.

Respondents vehemently urge that the intergovernmental agreement between Mount Carmel and Wabash County is a subterfuge and that the city should not be allowed to do indirectly through the county what it cannot do on its own. The very purpose of section

10 of article VII of the 1970 Constitution is to allow a local government to do indirectly that which it cannot do directly, as long as it is otherwise lawful. To accept the respondents' argument on this point would require the court to judicially rewrite both the Illinois Constitution and the statutes of the State of Illinois. That we cannot and will not do. Moreover, where local governments work together to accomplish a public task, such as finishing this highway, that cooperation is to be applauded rather than criticized. See *City of Chicago v. Gorham* (1980), 80 Ill. App. 3d 496, 400 N.E.2d 42.

■ Within the argument that the county has no legal authority to condemn the subject property, respondents argue that section 5—102 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, par. 5—102) limits the county's authority to add highways in these circumstances. The respondents contend that section 5—102 should be construed to limit the county to adding highways only if the extension connects principal municipalities or trading points. Respondents assert that Highway 1 will not connect municipalities or trading points, and, as a result, the county has no authority to condemn respondents' land. There are four reasons why this argument fails.

First, the clear language of the statute does not require such a construction. The statute states that, "as nearly as possible," added highways should connect principal municipalities and trading points within the county and between other counties. The language of the statute is not mandatory, but suggestive.

Second, when local governments cooperate, as the county and city did in this case, the courts are not to strictly construe the statutory grants of authority under which they act. *Connelly v. County of Clark* (1973), 16 Ill. App. 3d 947, 307 N.E.2d 128.

Third, the Illinois Highway Code must be read in its entirety and must not be construed piecemeal. Section 1—102 of the Highway Code sets forth the legislative intent. "[S]afe and efficient highway transportation is a matter of public concern. *** [I]t is intended to provide for integrated and systematic planning and orderly development in accordance with actual needs. *** [T]he elimination of congestion, accident reduction, and safety is an urgent problem and proper objective of highway legislation." (Ill. Rev. Stat. 1989, ch. 121, par. 1—102.) The testimony showed that the purpose of the highway to be built was to connect Wabash Valley College directly with Highways 15 and 1 outside of Mount Carmel and thus avoid or bypass the present route through the congested downtown area of Mount Carmel. Elimination of congestion, acci-

dent reduction, and safety would all be achieved by the completion of County Highway 1.

Finally, section 5—102 concerns highways connecting municipalities or trading points. We believe that Wabash Valley College should be considered a trading point within the meaning of the statute. The college is engaged in the trade of imparting knowledge or an education for money. Surely the legislature did not intend to prohibit a county from building a highway to a school, college or university under section 5—102. Ill. Rev. Stat. 1989, ch. 121, par. 5—102.

Respondents next argue that the county did not take the necessary action to obtain the land through condemnation. Specifically, they argue that the county should have filed its resolution stating the purpose and necessity of the condemnation before filing its complaint. The essence of their argument was stated by respondents in oral argument: that the law *should* require that a resolution must be filed before a complaint in condemnation is filed.

■ The law on this issue is clear. Where a condemning authority does not pass a specific resolution before filing its complaint in condemnation, that defect is not fatal to the condemnation suit if the evidence presented at the hearing on the motion to dismiss and traverse shows that the taking is necessary. *State of Illinois Medical Center Comm'n v. United Church of the Medical Center* (1986), 142 Ill. App. 3d 498, 491 N.E.2d 1327; see also *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 427 N.E.2d 70.

Additionally, where the respondent files a motion to dismiss and traverse the condemnation complaint, the burden of proof as to necessity is on the petitioner, but that burden is only to establish a *prima facie* case. A *prima facie* case of necessity is established by introducing the resolution stating the public need, even if that resolution is passed after the condemnation complaint is filed. (*State of Illinois Medical Center Comm'n v. United Church*, 142 Ill. App. 3d 498, 491 N.E.2d 1327.) Here, the county entered into the intergovernmental agreement before filing the complaint, which agreement stated the purpose of the taking to be the completion of County Highway 1. After filing the complaint, but before the hearing on the motion to dismiss and traverse, the county passed a resolution which specifically defined the purpose and stated that the attempts to reach an agreement with the landowner had failed. (The issue of whether the negotiations regarding compensation were sufficient is discussed separately.) The evidence presented at the hearing on the motion to dismiss and traverse clearly showed that the taking

was for a public purpose, specifically to complete Highway 1. The evidence presented was sufficient to establish a *prima facie* case of necessity.

Respondents' next argument is that the City of Mount Carmel was a necessary party to the condemnation proceeding and that the complaint should have been dismissed since the city was not joined. Although respondents do not state in what capacity the city should have been joined, it appears that they mean that the city should have been joined as a party plaintiff. The statute governing joinder of plaintiffs is section 2—404 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—404).

> "The rule is well established that all persons who are indispensable parties to an action must be joined or an order entered without jurisdiction over an indispensable party is null and void. [Citation.] However, the rule requiring joinder of indispensable parties is not applied when a party who is not before the court in person is so represented by others that his interest receives actual and efficient protection ***." *Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 982, 572 N.E.2d 1169, 1187.

Here, the city and the county were working together before the complaint was filed and have cooperated with each other throughout these proceedings. The City of Mount Carmel has already been prohibited from condemning respondents' land, so what more could the court prohibit the city from doing? The respondents have emphasized in two lawsuits that the City of Mount Carmel has no right to condemn their land that lies outside of the city limits, and we agree. Even if this court could order the city to be made a party, any pleading that the city filed would be subject to dismissal as *res judicata*. The city's interests, if any, are adequately protected, and no real issue of joinder exists.

Respondents urge this court to find that the city is a guarantor of the county's undertaking and, as such, must be joined as an indispensable party. However, in order to find that the city is a guarantor, we must find that the city promised to compensate respondents for the land condemned in the event that the county failed to pay respondents for the land. (*McCracken v. Olson Cos.* (1986), 149 Ill. App. 3d 104, 500 N.E.2d 487.) Here, the city did not promise to pay for the land condemned under any circumstance. Rather, the city promised only to pay for certain costs and maintenance of the highway, and the city agreed to assume jurisdiction of the highway, if the land around the highway were fully incorporated into the city.

The respondents were not a party to the intergovernmental agreement, nor is there anything in the agreement that indicates that the city and county intended to benefit respondents. The city cannot be called an indispensable party on the basis of a guarantee that does not exist.

The respondents' final argument regarding joinder is that the city is the real beneficiary of the condemnation, because the property will ultimately belong to the city under the terms of the intergovernmental agreement. However, this argument does not consider the fact that the intergovernmental agreement states that the city is to assume jurisdiction of the highway only when and if that area is incorporated. Due to the fact that the incorporation may never take place, it is unclear how this court could find that the city benefits so directly that the case could not be resolved without the city being joined as a party.

The city's involvement in this case is much more speculative than the State's involvement in a similar factual situation in the case of *City of Chicago v. Gorham* (1980), 80 Ill. App. 3d 496, 400 N.E.2d 42. In *Gorham*, the City of Chicago sought to condemn land that was blighted and later resold the land to the State of Illinois for the State of Illinois Building. The State had agreed to purchase the property from the city after the condemnation. The court in *Gorham* held that where the condemning authority has the statutory power to condemn the property, and where the property is to be taken for a public use, it is immaterial that some other governmental entity other than the condemning authority will also benefit from the taking. (*City of Chicago v. Gorham*, 80 Ill. App. 3d at 498-99.) The facts of the case at bar are substantially similar.

Respondents cite no authority that requires all parties or governmental units that may benefit from a condemnation proceeding to be made a party. If this argument is carried to its logical conclusion, every city or village located near a proposed highway would have to be made a party in every condemnation proceeding for every portion of the new highway, because the- city or village may benefit from having the highway close by.

Respondents argue that the county did not make a *bona fide* attempt to reach an agreement with them prior to filing for condemnation. Respondents correctly state that it is a condition precedent to bringing a condemnation suit that the governmental body must first make a *bona fide* attempt to agree with the landowners as to proper compensation for the taking. Only if the attempts to agree fail can the condemnation action be brought. (*Department of Trans-*

*portation v. Walker* (1980), 80 Ill. App. 3d 1039, 400 N.E.2d 956.) Respondents argue that the county only offered to purchase a right-of-way interest, that the Department of Transportation did not have authority to enter into good-faith negotiations with the landowners, and that no offer was made for damage to the remainder. We do not find any of respondents' arguments on these points convincing.

■ First, right-of-way is defined under section 2—217 in the Illinois Highway Code as "[t]he land, or interest therein, acquired for or devoted to a highway." (Ill. Rev. Stat. 1989, ch. 121, par. 2—217.) There simply is no distinction made between right-of-way and fee-simple interest under this statute. Respondents cite no authority for their contention that no valid offer was made due to the fact that the county only offered to purchase a right-of-way instead of a fee simple. Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) requires the citation of authority by the respondents before consideration is merited. *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.

Respondents contend that Larry Taylor, a realty specialist with the Department of Transportation, did not have the authority to negotiate with the landowners. Taylor told Clarence Partee, the life-estate owner and possessor of the real estate, that he was acting on behalf of the county. The evidence further showed, however, that Partee told Taylor in response to oral and written offers that he was not interested in selling the property. Ten days later the county superintendent of highways, Gordon Kirkman, sent a final letter of offer to Partee with the same offer as Taylor had made. No response was made to Kirkman's letter even though a response was requested. Where no response is made to a final offer of compensation, the condemning authority is not required to do more before filing the condemnation complaint. *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 182 N.E.2d 169.

Finally, respondents argue that the attempt to agree was not *bona fide* because the offer did not include any amount for the remainder of the property not condemned. However, where the actions of the landowner make it clear that offers to purchase would be futile, then no offer is necessary for the land or for the damage to the remainder of the property that is not condemned. (*County Board of School Trustees v. Boram* (1962), 26 Ill. 2d 167, 186 N.E.2d 275.) The facts of this case show that the county made an offer. The offer was not responded to. Therefore, the county was under no obligation to continue to negotiate further.

■ Respondents' final argument is that the amount of property taken was excessive, in that only a right-of-way or easement was necessary but a fee-simple interest was condemned. That argument has no merit. The statute authorizing the condemnation controls. Where, as here, the controlling statute authorizes the condemning body to take a fee-simple interest, then a fee-simple interest can be condemned, even if a lesser interest would have satisfied the public use. *Department of Transportation v. First Galesburg National Bank & Trust Co.* (1990), 141 Ill. 2d 462, 566 N.E.2d 254.

For all of the reasons stated above, we affirm the judgment of the circuit court of Wabash County denying respondents' motion to dismiss and traverse.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.