# Illinois Official Reports

## Appellate Court

---

***Rock River Water Reclamation District v. The Sanctuary Condominiums of Rock Cut,***
**2014 IL App (2d) 130813**

---

| | |
|---|---|
| Appellate Court Caption | ROCK RIVER WATER RECLAMATION DISTRICT, Plaintiff-Appellee, v. THE SANCTUARY CONDOMINIUMS OF ROCK CUT, Defendants-Appellants (Unknown Owners, Defendants). |
| District & No. | Second District<br>Docket No. 2-13-0813 |
| Filed | December 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff water reclamation district's proposal to construct a sanitary sewer extension for a residential subdivision that would require a "trunk line" to be installed beneath defendant condominiums pursuant to a permanent easement and a temporary construction easement, the trial court, after dismissing plaintiff's first complaint for condemnation, properly denied defendant's motion to dismiss plaintiff's second condemnation action on grounds of *res judicata* and improper notice, and then denied defendant's traverse and motion to dismiss after a bench trial, since plaintiff's complaint set forth all of the elements necessary for its exercise of the right of condemnation and defendant failed to introduce evidence that plaintiff abused its discretion. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 12-ED-2; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Richard B. Kirk, of Schirger Law Offices, LLC, of Rockford, for appellants.

Joshua G. Vincent and Thomas J. Lester, both of Hinshaw & Culbertson LLP, of Chicago, for appellee.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant dispute concerns a proposal by plaintiff, Rock River Water Reclamation District, to build a sanitary sewer extension (Oak Crest project) to a residential development known as the Oak Crest subdivision. In October 2010, plaintiff adopted an ordinance providing for construction of the Oak Crest project. Connecting the Oak Crest project to the existing sanitary sewer system would require installation of a "trunk line" running beneath property belonging to defendant The Sanctuary Condominiums of Rock Cut. As a result, plaintiff sought to obtain from defendant both a permanent easement and a temporary construction easement. In April 2011, after discussions to acquire the easements broke down, plaintiff filed in the circuit court of Winnebago County a complaint for condemnation. On defendant's motion, the trial court dismissed plaintiff's complaint on the bases that the ordinance authorizing construction of the Oak Crest project failed to state that a taking of defendant's property was necessary and failed to describe with reasonable certainty the property sought to be taken.

¶ 2    Thereafter, plaintiff enacted another ordinance in an effort to cure the deficiencies identified by the trial court. Plaintiff then offered defendant $2,700 for the easements, double their appraised value. Defendant rejected plaintiff's offer, and, in January 2012, plaintiff initiated a new condemnation action. Defendant unsuccessfully moved to dismiss the second condemnation action on the grounds of *res judicata* and improper notice. Defendant then filed a traverse and motion to dismiss, which the trial court denied following a bench trial. The court subsequently determined that $1,350 was just compensation for the easements. Defendant then filed a notice of appeal. On appeal, defendant raises three principal issues. First, defendant contends that the trial court erred in denying its motion to dismiss plaintiff's second condemnation action on the ground of *res judicata*. Second, defendant challenges the trial court order denying its traverse and motion to dismiss. Third, defendant argues that the trial court erred in refusing to compensate it for any damage that installation of the proposed trunk line would cause to its property. For the reasons set forth below, we affirm the judgment of the circuit court.

## I. BACKGROUND

Plaintiff is an Illinois unit of local government that is organized under the Sanitary District Act of 1917 (Sanitary Act) (70 ILCS 2405/0.1 *et seq.* (West 2010)) and provides wastewater conveyance and treatment services to certain properties located in and around Rockford. On July 26, 2010, plaintiff's committee on local improvements (Committee) adopted a resolution to build the Oak Crest project and to levy a special assessment to pay for it (First Resolution). See 70 ILCS 2405/22a.5 (West 2010). The First Resolution set forth a legal description of the property to be served by the Oak Crest project. The First Resolution also called for a public hearing on the Oak Crest project and directed that notice of the hearing "shall be sent by mail to the person or entity shown by the County Collectors current warrant book to be the party in whose name the general real estate taxes were last assessed on each lot, block, tract or parcel of land fronting on the proposed improvement." See 70 ILCS 2405/22a.5 (West 2010).

On August 23, 2010, the public hearing was held to allow comments and questions regarding the Oak Crest project. The Committee met immediately after the hearing and adopted another resolution (Second Resolution). See 70 ILCS 2405/22a.6 (West 2010). The Second Resolution noted that a public hearing had been held "on the question of the desirability of the proposed local improvement to be paid for by special assessment" and that "no sufficient objection was made to the proposed improvement." Accordingly, the Committee recommended "that the proposed improvement be made in accordance with an ordinance authorizing the same."

On October 25, 2010, plaintiff's board of trustees adopted Ordinance No. 10/11-S-02 (2010 Ordinance) (Rock River Water Reclamation District Ordinance No. 10/11-S-02 (adopted Oct. 25, 2010)). See 70 ILCS 2405/22a.5 (West 2010). The 2010 Ordinance provided that "[a] local improvement *** to be paid for by special assessment shall be constructed in the Rock River Water Reclamation District *** consisting of sanitary sewers benefiting and potentially serving" the properties legally described therein, which properties were designated collectively as the "Oak Crest Sanitary Sewer Area." Rock River Water Reclamation District Ordinance No. 10/11-S-02 (adopted Oct. 25, 2010). The 2010 Ordinance authorized a levy upon the property owners in said area to pay for the improvement and incorporated by reference a plat map of the Oak Crest project.

To connect the Oak Crest project to the existing sanitary sewer system, plaintiff proposed running a "trunk line" beneath defendant's property, thereby requiring plaintiff to obtain a permanent easement and a temporary construction easement. Between January 17, 2011, and March 24, 2011, representatives for the parties met on at least three occasions to discuss the acquisition of the easements, but they were unable to reach an agreement. As a result, on April 7, 2011, plaintiff filed its first complaint for condemnation against defendant (2011 Complaint or first condemnation action). Citing section 15 of the Sanitary Act (70 ILCS 2405/15 (West 2010)), the 2011 Complaint provided that "[p]laintiff may acquire by condemnation, all real property, right of way in privilege, either within or without its corporate limits, which may be required for its corporate purposes." The 2011 Complaint alleged that to proceed with the Oak Crest project it was necessary to acquire a permanent easement and a temporary construction easement. Attached to the 2011 Complaint was an unexecuted easement describing the land to be taken and a plat map. Defendant moved to dismiss the 2011 Complaint on two grounds. First, defendant argued that the 2010 Ordinance

failed to state that the Oak Crest project required the taking of defendant's property. Second, defendant argued that the plat map attached to the 2010 Ordinance failed to reasonably describe the portion of defendant's property to be taken.

¶ 8     In a memorandum of decision and order entered on September 22, 2011, the trial court granted defendant's motion to dismiss the 2011 Complaint. The court reasoned as follows:

"Under the [Sanitary Act], in order to proceed with a sewer construction project, [plaintiff] must prepare and approve an ordinance describing the improvement. 70 ILCS 2405/22a.6. The statute requires that 'if the improvement requires the taking or damaging of property, the ordinance shall so state ...' *Id*. Illinois caselaw has further held that whenever a proposed improvement will require that private property be taken or damaged, it is required that the enabling ordinance 'shall describe the property to be taken or damaged with reasonable certainty.' *City of Kankakee vs. Dunn*, 337 Ill. 391, 393 (1929).

In the present case, the Court finds that neither the [2010 Ordinance] nor the attached plat map state[s] that a taking of Defendant's property is necessary, nor do they describe the portion of [defendant's] property to be taken with reasonable certainty. The ordinance itself fails to mention the Defendant's property or the fact that the proposed improvement will require that easements be obtained by [plaintiff]. The Plaintiff *** argues that this information is provided by the plat map referred to by the [2010] Ordinance. However, the plat map does not state that Defendant's property will be taken. Moreover, it is the Court's opinion that the plat map fails to reasonably describe the portion of [defendant's] property to be taken for several reasons. First, the map is not drawn to scale. Second, the map does not state the length, width or total amount of the land to be taken. Third, the map does not state whether [defendant's] land is to be taken by easement, fee simple, or some other method. The map simply shows the path of the proposed off-site sewer as it progresses through [defendant's] property with dotted lines on each side of the sewer lines' path which is labeled 'project area'.

The Illinois Supreme Court has held that a line on a map is not sufficient to provide a reasonable description of the condemned property. *City of Kankakee vs. Dunn*, 337 Ill. at 395. The Court does not find that the inclusion of more lines cures the deficiency. The word 'easement' does not appear in the [2010 Ordinance] or on the map. There are no estimates regarding the amount of land to be taken. The plat map simply shows the scope of the project. The Court does not believe that it was ever intended to describe with reasonable certainty the amount of Defendant's land needed to be taken by [plaintiff]. While it is not improper to attach a map to an enabling ordinance, neither the [2010 Ordinance] nor the map contain[s] a statement that [plaintiff] requires the taking or damaging of Defendant's *** land in order to proceed with the Oak Crest Subdivision Sanitary Sewer Project. The [2010 Ordinance] is silent on the subject while the map simply shows a series of lines going through Defendant's property.

Statutes conferring and ordinances enabling the power of eminent domain must be strictly construed in order to protect the rights of property owners. *Forest Preserve District of DuPage County vs. Miller*, 339 Ill. App. 3d 244, 254 (2d Dist. 2003). In the present case, the Court finds that the [2010 Ordinance] and attached map violate[ ] 70

- 4 -

ILCS 2405/22a.6 by failing to state that the project requires the taking of Defendant's land, and that the [2010 Ordinance] and map also fail to reasonably describe that portion of Defendant's land to be taken."

¶ 9 Plaintiff did not appeal the trial court's ruling of September 22, 2011. Instead, plaintiff enacted Ordinance No. 11/12-M-08 (2011 Ordinance), titled "Oak Crest Sanitary Sewer Extension, Special Assessment No. 118 Ordinance Authorizing Condemnation Proceedings" (Rock River Water Reclamation District Ordinance No. 11/12-M-08 (approved Nov. 28, 2011)). The 2011 Ordinance incorporated a description of defendant's property by reference and provided that "an easement for construction of said sewer is required across and through [defendant's] property." Rock River Water Reclamation District Ordinance No. 11/12-M-08 (approved Nov. 28, 2011). Noting that plaintiff had made several unsuccessful attempts to negotiate with defendant for the easements, the 2011 Ordinance authorized plaintiff's attorney to obtain them by condemnation.

¶ 10 In a letter dated December 6, 2011, plaintiff offered defendant $2,700 for the easements, double their value as set forth in an appraisal obtained by plaintiff in May 2011. Through its attorney, defendant rejected plaintiff's offer but advised that it would consider any other offer plaintiff wished to make. On January 17, 2012, plaintiff filed its second complaint for condemnation against defendant (2012 Complaint or second condemnation action). The 2012 Complaint alleged that, pursuant to section 15 of the Sanitary Act (70 ILCS 2405/15 (West 2010)), plaintiff "may acquire by condemnation all real property, right of way in privilege, either within or without its corporate limits, which may be required for its corporate purposes." The 2012 Complaint further alleged that to proceed with the Oak Crest project it was necessary to acquire a permanent sanitary-sewer easement and a temporary construction easement. The 2012 Complaint stated that by virtue of the 2011 Ordinance plaintiff was authorized to exercise the right of eminent domain to acquire defendant's property for the Oak Crest project. Finally, the 2012 Complaint prayed for the court to provide just compensation to defendant for plaintiff's acquisition of defendant's property. Attached to the 2012 Complaint was an unexecuted easement describing the land to be taken, a plat of the easement, and a copy of the 2011 Ordinance.

¶ 11 On February 17, 2012, defendant filed a motion to dismiss with prejudice the 2012 Complaint as barred by a prior judgment, pursuant to section 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4) (West 2010)). In a memorandum accompanying its motion, defendant argued that *res judicata* barred the 2012 Complaint because the 2011 Ordinance did not cure the defects of the 2010 Ordinance. According to defendant, "a resolution to take property does not fix a resolution that authorizes a public improvement but fails to state the need to take private property for that improvement." Stated differently, it was defendant's position that a declaration to take private property must be made in the *same* ordinance that authorizes the public purpose for which the property will be taken. Defendant posited that, in the absence of a single ordinance authorizing the Oak Crest project, indicating that the taking of defendant's property was necessary, and describing with reasonable certainty the land to be taken, the 2011 Ordinance "ha[d] no effect." Thus, defendant reasoned, the 2012 Complaint was not a new cause of action, because (1) the trial court already ruled that the 2010 Ordinance does not enable plaintiff to take defendant's property; (2) that ruling was a final judgment on the merits; and (3) there was an identity of parties.

¶ 12    On June 27, 2012, the trial court denied defendant's motion to dismiss pursuant to section 2-619(a)(4) of the Code. The court noted that the doctrine of *res judicata* serves as an absolute bar to a subsequent action between the same parties or their privies on the same cause of action, provided that a final judgment on the merits was rendered by a court of competent jurisdiction. See *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 955 (2008). The court concluded, however, that not all of the elements of *res judicata* were present. The court explained:

"This Court finds that all of the conditions of *res judicata* have not been satisfied because while the identity of the parties or their privies is the same as the previous cause of action *** the ordinances involved in the new cause of action *** and the previous action are not identical, and thus the two cause of actions [*sic*] differ. Specifically, the [2010 Ordinance] was an Ordinance of the Rock River Water Reclamation District Providing for the Constr. of Sanitary Sewers in the Oak Crest Sanitary Sewer Area to be Paid for by Special Assessment No. 118, 10/11-S-02 (Oct. 25, 2010) and the [2011 Ordinance] is Rock River Water Reclamation Dist. Oak Crest Sanitary Sewer Extension, Special Assessment No. 118 Ordinance Authorizing Condemnation Proceedings, 11/12-M-08 (Nov. 28, 2011) ***. The [plaintiff's] new ordinance is applicable to the Defendant, and unlike the previous ordinance, this ordinance properly describes the land sought to be condemned by the [plaintiff] under its right of eminent domain granted by the Sanitary Act pursuant to the Eminent Domain Act (735 ILCS 30/1-1-1 *et seq.*). 70 ILCS 2405/8; 70 ILCS 2405/15. The [plaintiff's] curing of the defects of the original ordinance precludes the dismissal of the current condemnation action under the doctrine of *res judicata* because the two ordinances are not identical and are therefore separate issues."

¶ 13    The trial court also addressed defendant's contention, raised for the first time at the hearing on its motion to dismiss, that it did not receive proper notice of the "special assessment resolution and the resulting ordinance which preceded [plaintiff's] condemnation action." The court held that defendant could not challenge the special assessment. The court explained that the condemnation case and the proceedings involving the special assessment were separate matters governed by different provisions of the Sanitary Act. The court held that sections 22a.5 and 22a.6 of the Sanitary Act (70 ILCS 2405/22a.5, 22a.6 (West 2010)), the notice provisions on which defendant relied, govern special assessments and "refer to notice requested to be given to persons who are subject to a special assessment." Because defendant was not subject to a special assessment, it was not entitled to mailed notice of the special assessment proceedings. Finally, the court held that, to the extent that its "prior order" referenced sections 22a.5 and 22a.6, those citations were made in error. Thereafter, defendant moved for reconsideration of the denial of its motion to dismiss. Defendant also moved to have questions related to the *res judicata* and improper-notice issues certified for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). The trial court denied both the motion to reconsider and the motion to certify.

¶ 14    On December 27, 2012, defendant filed a traverse and motion to dismiss. Defendant argued that plaintiff failed to properly invoke its power of eminent domain before attempting to take defendant's property. Defendant further argued that the Oak Crest project was not necessary, the amount of property sought to be taken was excessive, and plaintiff did not make a good-faith attempt to reach an agreement with defendant on just compensation.

Plaintiff moved to dismiss the traverse or, alternatively, for summary judgment on it. Subsequently, the trial court certified for interlocutory appeal under Rule 308 the questions related to defendant's *res judicata* and improper-notice arguments. This court denied defendant's application for leave to appeal. See *Rock River Water Reclamation District v. The Sanctuary Condominiums of Rock Cut*, 2013 IL App (2d) 130396-U.

¶ 15    On June 17, 2013, a bench trial was held on defendant's traverse and motion. At the hearing, plaintiff called three witnesses: Frank Hood, Dana Carroll, and Debbie Lyons. Hood testified that he is a resident of the Oak Crest subdivision and has been the president of the subdivision's homeowner's association for the past 13 years. Hood testified that none of the homes in the Oak Crest subdivision have sanitary sewer service. Instead, they use septic systems. Hood testified that some homeowners experience continual problems with the septic systems. He noted, for instance, that, as a result of clay soil in the area, some residents are required to frequently replace their septic tanks. According to Hood, it costs $10,000 "every couple of years" to have the septic systems fixed. Hood testified that other methods to dispose of sanitary waste were explored, such as pump systems. However, the pumps freeze in the winter, causing backups into the homes. Hood also pointed out that some parcels in the Oak Crest subdivision cannot be developed because they will not support septic systems. Hood represented that land could be developed only if sanitary sewers were installed.

¶ 16    Carroll is employed as plaintiff's engineering manager. Carroll testified that the Oak Crest subdivision is currently served by septic systems, most of which date back to the sixties or early seventies. Carroll stated that these septic systems are regulated by the county health department. According to Carroll, the health department "recognizes the benefits of a sanitary sewer over septic system for public waste disposal." Carroll noted that the health department has regulations in place that require residents to connect to sanitary sewer service if their septic system fails or needs repair and if a sanitary sewer is available within 200 feet of the property.

¶ 17    Carroll testified that gravity sewer service is the most convenient, reliable, and cost-effective way to serve property. As a result, it is plaintiff's policy to install gravity sewer service wherever possible. Carroll noted that gravity sewer service requires plaintiff to take into account the area's topography. He explained that the sewer lines need to be placed deep enough so that gravity will move the wastewater without pumps. Carroll testified that topographically the Oak Crest subdivision sits on a high-ground ridge line. To determine the route that would provide the best service to the Oak Crest subdivision, Carroll analyzed the properties that needed to be served and their proximity to existing sewer lines in the vicinity. Carroll noted that an existing sewer line in the Colville Heights area is not deep enough to serve all of the Oak Crest subdivision. Carroll determined, however, that a line running south from the Oak Crest subdivision and then west to an existing sewer line at Briar Patch Lane can be made deep enough to serve the Oak Crest subdivision. Carroll stated that the identified route is the most direct, the one that will serve the greatest number of properties, and the most cost-effective.

¶ 18    Carroll further testified that, after plaintiff enacted the 2010 Ordinance, his department drafted legal descriptions of all of the easements needed for the Oak Crest project, including the permanent and temporary construction easements on defendant's property. Carroll assigned his employee Ken Kelley, a licensed surveyor, to the easement negotiations. Kelley made routine reports to Carroll regarding the progress of the negotiations. Carroll noted that

during negotiations plaintiff typically offers to pay restoration costs. According to Carroll, during the negotiations here, plaintiff made proposals to defendant, but defendant never tendered any monetary demands in return. Carroll testified that a May 2011 appraisal obtained by plaintiff concluded that just compensation for the easements was $1,350.

¶ 19 Carroll testified that, despite the dismissal of the 2010 Complaint, plaintiff opted to proceed with the Oak Crest project. To that end, plaintiff enacted the 2011 Ordinance. Thereafter, plaintiff directed its attorney to negotiate with defendant prior to commencing another condemnation suit. Plaintiff offered defendant $2,700 for the easements, double the appraised value of the property. According to Carroll, the $2,700 would be in addition to any restoration costs. Carroll noted that defendant declined plaintiff's offer and presented no counteroffer.

¶ 20 On cross-examination, Carroll testified that the sewer line traversing defendant's property would be a 12-inch trunk line. Carroll allowed that the installation of a trunk line "will disturb a lot of ground." He explained that, to physically lay the trunk line, an excavator will dig a ditch to the depth prescribed on the plans, the trunk line will be laid in, and the ditch will be backfilled. Carroll acknowledged that, during the initial negotiations with defendant in the spring of 2011, the parties discussed landscaping replacement and additional plantings. Carroll also testified that he prepared a cost estimate of the Oak Crest project, which estimate included the cost of the trunk line running beneath defendant's property.

¶ 21 Lyons serves as plaintiff's executive services coordinator. Lyons testified that her responsibilities in that position include providing notice of public meetings and maintaining permanent records of those meetings, including the minutes. Lyons noted that plaintiff's board meetings are open to the public. Lyons identified plaintiff's exhibit No. 2 as the minutes of the meeting on November 28, 2011, where the board approved the 2011 Ordinance. Lyons also identified plaintiff's exhibit No. 4 as the sign-in sheet for the November 28, 2011, meeting. Lyons testified that the sign-in sheet indicates the members of the public who were present at the meeting. The sign-in sheet shows that defendant's attorney attended the meeting.

¶ 22 Defendant opted not to call any witnesses. Following closing arguments, the trial court found that the Oak Crest project was necessary, that plaintiff negotiated in good faith, and that the amount of property to be taken for the easements was not excessive. The court also determined that plaintiff's authority for the taking was established by the 2011 Ordinance. Accordingly, the court denied defendant's traverse and motion to dismiss.

¶ 23 On August 1, 2013, the trial court heard evidence on the question of just compensation. Plaintiff called Matthew Magdziarz, a real estate appraiser. Magdziarz testified that he was hired to prepare an appraisal of sanitary sewer easements across defendant's property. Magdziarz prepared an appraisal in May 2011, which he updated in July 2013 with a "retrospective" value date of January 17, 2012. Magdziarz testified that the impressments of the easements would have no effect on the highest and best use of defendant's property and would not inhibit its utility, size, or further development. Magdziarz concluded that the fair cash value of the permanent easement was $1,200 and the fair cash value of the temporary construction easement was $150, for a total value of $1,350.

¶ 24 Defendant called Nicola Bennett, a resident in the condominium complex and a former officer in defendant's homeowner's association. Defendant sought to introduce testimony from Bennett regarding a landscape architect's estimate for restoring defendant's property

after installation of the proposed trunk line. Plaintiff objected on the grounds that Bennett's testimony was (1) irrelevant to the issue of the easements' value and (2) hearsay. The trial court sustained the objection on both grounds. Defendant then made an offer of proof regarding Bennett's testimony.

¶ 25    Following closing arguments, the trial court ruled that $1,350 was just compensation for the easements. On August 8, 2013, the trial court entered an order granting the easements. In the order, the trial court authorized plaintiff to take "immediate possession" of the property in question. The order further provided that, if defendant filed a notice of appeal, "such immediate possession shall be subject to the Plaintiff posting a bond pursuant to 735 ILCS 30/10-5-80." On the same day the order was entered, defendant filed both a notice of appeal "from the Order entered on August 8, 2013," and a motion for a stay pending appeal pursuant to Illinois Supreme Court Rule 305(b) (eff. July 1, 2004). Plaintiff then posted bond in the amount of $1,350. On September 16, 2013, the trial court heard oral arguments on defendant's motion for a stay and granted it. The court's stay ruling was reduced to writing on September 17, 2013. In a separate appeal, this court affirmed the trial court order granting the stay. *Rock River Water Reclamation District v. The Sanctuary Condominiums of Rock Cut*, 2014 IL App (2d) 131081-U.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, defendant raises three principal issues. First, defendant contends that the trial court erred in denying its section 2-619(a)(4) motion to dismiss (735 ILCS 5/2-619(a)(4) (West 2010)) plaintiff's second condemnation action, on the ground of *res judicata*. Second, defendant argues that the trial court erred in denying its traverse and motion to dismiss, because plaintiff neither made a *prima facie* showing that it has the authority to take defendant's property nor established that the Oak Crest project is necessary. Third, defendant argues that the trial court erred in refusing to compensate it for any damage that the installation of the proposed trunk line would cause to its property. Prior to addressing these issues, we discuss three preliminary matters–defendant's motion to strike portions of plaintiff's brief, plaintiff's motion for sanctions against defendant, and plaintiff's claim that we lack jurisdiction to consider defendant's *res judicata* argument.

¶ 28                                    A. Open Motions

¶ 29    Defendant has filed a motion to strike portions of plaintiff's brief, pursuant to Illinois Supreme Court Rule 375(a) (eff. Feb. 1, 1994). Defendant identifies three particular passages from the brief that, it maintains, are not supported by citations to authority and therefore violate Illinois Supreme Court Rules 341(h)(7) and (i) (eff. Feb. 6, 2013) (requiring the appellee's brief to include argument "which shall contain the contentions of the [appellee] and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Plaintiff has filed an objection to defendant's motion to strike and a motion for monetary sanctions against defendant pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). According to plaintiff, the motion to strike was not brought in good faith and is legally without merit.

¶ 30    Initially, we agree that defendant's motion to strike lacks merit. Of the three passages referenced by defendant, two appear in the section of plaintiff's brief entitled "Summary of

Argument." It is clear from reading plaintiff's brief that plaintiff intended this section to serve as a synopsis of the arguments it would later present and develop in its brief, and we find no rule violation with regard to those passages. The third passage appears in the argument section of plaintiff's brief and consists of approximately 10 pages. This passage is a response to defendant's position regarding the interpretation and application of section 22a.6 of the Sanitary Act (70 ILCS 2405/22a.6 (West 2010)). The third passage also seeks to distinguish the authorities defendant cites in its opening brief. In its objection to defendant's motion to strike, plaintiff concedes that it did not cite any *direct* authority for its interpretation and application of section 22a.6. It notes, however, that it was unable to find any authority interpreting this provision. Nevertheless, plaintiff asserts that its position is not devoid of any support and points out that it discusses a case that indirectly supports its position. We agree with plaintiff and therefore deny plaintiff's motion to strike.

¶ 31   Despite our conclusion that defendant's motion to strike lacks merit, we also deny plaintiff's motion for monetary sanctions against defendant. Nevertheless, we do admonish defendant's attorney for what to us appears to be an attempt to place before this court additional argument that defendant was unable to include in its reply brief because of the page limitations mandated by Illinois Supreme Court Rule 341(b) (eff. Feb. 6, 2013) (limiting the appellant's opening brief to 50 pages and the appellant's reply brief to 20 pages absent permission from the reviewing court to exceed these limitations). We presume that the purpose of defendant's motion to strike was to explain to this court why portions of plaintiff's brief violate the rules of our supreme court and should therefore be disregarded. Yet, rather than confine the motion to this narrow issue, defendant devotes a substantial portion of the argument section of the motion to discussing the merits of the underlying appeal. Therefore, we admonish defendant's attorney for attempting to circumvent the page limitations promulgated by our supreme court. Such conduct is not well taken, and, while we decline to impose monetary sanctions in this instance, we will not hesitate to do so in the future should we find a violation of court rules.

¶ 32                                B. Jurisdiction

¶ 33   Next, we address whether we have jurisdiction to review the propriety of the trial court's order denying defendant's section 2-619(a)(4) motion to dismiss on the ground of *res judicata*. Plaintiff insists that we lack jurisdiction to consider that issue, because the order denying the motion to dismiss was not specified in defendant's notice of appeal.

¶ 34   "The purpose of a notice of appeal is to inform the party prevailing in the trial court that the opposing party seeks review of the judgment ***." *Ruane v. Amore*, 287 Ill. App. 3d 465, 470 (1997). To this end, Illinois Supreme Court Rule 303(b)(2) (eff. May 30, 2008) requires the notice of appeal to "specify the judgment appealed from and the relief sought from the reviewing court." Nevertheless, the notice of appeal is to be liberally construed as a whole. *In re Marriage of Goldberg*, 282 Ill. App. 3d 997, 1001 (1996). Thus, in *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434 (1979), the supreme court held that a notice of appeal need not specify a particular order to confer jurisdiction if the order specified in the notice of appeal directly relates back to the order sought to be reviewed. Stated differently, an "unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." *Burtell*, 76 Ill. 2d at 435 (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)).

¶ 35    Defendant raised the *res judicata* argument in its section 2-619(a)(4) motion to dismiss. The trial court denied that motion in an order entered on June 27, 2012. Plaintiff notes, however, that defendant's notice of appeal references only the August 8, 2013, order vesting plaintiff with title to the easements. Further, for reasons discussed more fully below, plaintiff insists that the June 27, 2012, order denying the motion to dismiss was not a step in the procedural progression leading to the August 8, 2013, judgment specified in the notice of appeal. As a result, plaintiff maintains, we lack jurisdiction to entertain defendant's *res judicata* argument and must strike those pages of defendant's brief devoted to that issue.

¶ 36    In support of its position, plaintiff relies on *Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18 (1992). In *Dalen*, the plaintiff filed a complaint seeking payment of principal and interest owed on two notes. On June 26, 1991, the trial court granted summary judgment in favor of the plaintiff, and the defendant subsequently appealed. The defendant's brief sought review of five different orders entered by the trial court. However, only one–the order granting summary judgment–was identified in the defendant's notice of appeal. Among the orders not referenced in the notice of appeal were an order denying the defendant's motion to dismiss pursuant to section 2-619(a)(3) of the Code (Ill. Rev. Stat. 1989, ch. 110, ¶ 2-619(a)(3) (providing for involuntary dismissal on the basis that there is another action pending between the same parties for the same cause)) and an order denying a motion to reconsider that ruling. The *Dalen* court held that neither the order denying the motion to dismiss nor the order denying the motion to reconsider was a step in the procedural progression leading to the order specified in the notice of appeal, because the two orders "focused on matters *outside* the scope of the cause at issue." (Emphasis in original.) *Dalen*, 230 Ill. App. 3d at 24. The court elaborated that the defendant "was apparently attempting to either dismiss the instant action because of the pending action in [another county], or include the separate issues raised there in this action." *Dalen*, 230 Ill. App. 3d at 24.

¶ 37    Plaintiff asserts that, just as in *Dalen*, the denial of the motion to dismiss in this case was not a step in the procedural progression leading to the final judgment specified in defendant's notice of appeal. According to plaintiff, defendant's section 2-619(a)(4) motion to dismiss, like the section 2-619(a)(3) motion to dismiss in *Dalen*, "focused on matter 'outside the scope of the cause at issue,' namely, the ruling from the [first condemnation action] that the [2010] Ordinance failed to describe defendant's property and could not support its condemnation." In contrast, plaintiff argues, "[t]he final judgment of condemnation *** was based on the [2011] Ordinance, not the [2010] Ordinance that was the subject of the [first condemnation action] and the [section] 2-619(a)(4) motion." Thus, plaintiff reasons, the ruling on defendant's motion to dismiss concerned a collateral matter–a proceeding in another case–and did not form any basis for the final judgment identified in the notice of appeal. We disagree.

¶ 38    In its section 2-619(a)(4) motion to dismiss and the accompanying memorandum, defendant argued that plaintiff could not cure the defects in the 2010 Ordinance by enacting a separate ordinance stating that the taking was necessary and describing the property sought to be taken. Thus, defendant posited, in the absence of a single ordinance authorizing the Oak Crest project, indicating that a taking was necessary, and describing the land to be taken, the 2011 Ordinance "ha[d] no effect." In other words, contrary to plaintiff's position, defendant's section 2-619(a)(4) motion to dismiss did not concern the 2010 Ordinance. Rather, it involved whether plaintiff properly invoked its eminent domain power by enacting the 2011

- 11 -

Ordinance. Indeed, in ruling on defendant's section 2-619(a)(4) motion, the trial court's analysis centered on whether the 2011 Ordinance cured the deficiencies identified with the 2010 Ordinance in the first condemnation action. Accordingly, we find that the trial court's ruling on defendant's section 2-619(a)(4) motion was necessary to the ultimate relief sought by plaintiff, *i.e.*, acquisition of easements across defendant's property, and therefore constituted a step in the procedural progression leading to the judgment specified in the notice of appeal. Thus, we have jurisdiction to consider defendant's *res judicata* argument.

¶ 39                                    C. *Res Judicata*

¶ 40        Turning to the merits, defendant initially argues that the trial court erred in denying its section 2-619(a)(4) motion to dismiss plaintiff's second condemnation action on the ground of *res judicata*. According to defendant, *res judicata* bars this action because the first condemnation action was dismissed by a final judgment on the merits, the parties are the same in both actions, and the same facts provide the foundation for both the previous and current actions. Plaintiff responds that the ordinance upon which the second condemnation action is based is a different ordinance from the one at issue in the first condemnation action. Therefore, plaintiff maintains, the two suits have "different foundations and describe different transactions," and *res judicata* does not bar the second condemnation action.

¶ 41        " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). *Res judicata* acts as a bar to litigation of all issues that were actually decided and that could have been raised and decided in the earlier action. *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 955 (2008). There are three essential elements of *res judicata*: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of parties or their privies; and (3) an identity of causes of action. *Hudson*, 228 Ill. 2d at 467. We review *de novo* a trial court order granting or denying a motion to dismiss on the ground of *res judicata*. *Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc.*, 318 Ill. App. 3d 856, 863 (2001).

¶ 42        In this case, it is not disputed that there was a final judgment on the merits rendered by a court of competent jurisdiction in the first condemnation action or that there is an identity of parties in that action and the second condemnation action. The issue in dispute is whether the two condemnation actions involve the same cause of action. In determining whether there is an identity of causes of action, Illinois courts apply the "transactional test." *Cooney v. Rossiter*, 2012 IL 113227, ¶ 21. Under this test, a court examines whether the subsequent action arises out of the same set of operative facts as the original action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). In other words, a cause of action is defined by the facts that give the plaintiff a right to relief, and, if the same facts are essential to the maintenance of both proceedings, then there is an identity between the allegedly different causes of action and *res judicata* bars the latter action. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 295 (1992).

¶ 43        Instructive in determining whether there is an identity of causes of action is *City of Chicago*, 385 Ill. App. 3d 945. In that case, Chicago enacted an ordinance authorizing the acquisition of the defendant's entire parcel of property. Thereafter, Chicago filed a condemnation action. The defendant filed a traverse and motion to dismiss, contending that

the condemnation action was unnecessary and constituted an excessive taking of property for private use. The trial court dismissed Chicago's condemnation action, finding that the taking authorized by the ordinance was excessive because only the northern portion of the defendant's property was needed for the desired purpose. Chicago then filed a motion requesting that the trial court modify its judgment to reflect that the acquisition of the northern portion of the property was proper and could proceed, but the trial court denied the motion. In response, Chicago enacted a new ordinance authorizing the acquisition of only the northern portion of the property. Following unsuccessful negotiations to acquire the northern portion of the property, Chicago filed a second condemnation action. The defendant again filed a traverse and motion to dismiss, contending that the second lawsuit was barred by *res judicata* because Chicago could have sought to acquire only the northern portion in the prior action. The trial court denied the traverse and motion to dismiss, finding that the amount of land sought in the second action was less than the amount requested in the initial lawsuit.

¶ 44      On appeal, the reviewing court affirmed the trial court's finding that *res judicata* did not bar Chicago's second condemnation action. *City of Chicago*, 385 Ill. App. 3d at 960. The court concluded that the two lawsuits did not involve the same cause of action, because each lawsuit was based on a different set of facts. *City of Chicago*, 385 Ill. App. 3d at 960. The court initially noted that the first lawsuit was brought pursuant to an ordinance authorizing Chicago to acquire all of the defendant's land whereas the second lawsuit was brought pursuant to an ordinance authorizing Chicago to acquire only a portion of the defendant's property. *City of Chicago*, 385 Ill. App. 3d at 960. Thus, the court reasoned, "the two cases are based upon substantively different ordinances and the ordinance giving rise to the present case is an additional fact that did not exist at the time of the initial lawsuit." *City of Chicago*, 385 Ill. App. 3d at 960. The court also pointed out that the reduction in the amount of land sought in the second action "is a changed circumstance that could have a decisive impact on the trial court's redetermination of whether the taking was necessary." *City of Chicago*, 385 Ill. App. 3d at 960. Finally, the court noted that "an additional issue that was critical to the court's dismissal of the prior lawsuit" was not present in the second action. *City of Chicago*, 385 Ill. App. 3d at 960. Specifically, the ordinance at issue in the first action did not permit Chicago to take less than all of the defendant's property whereas the ordinance at issue in the second action authorized Chicago to acquire half of the defendant's property. *City of Chicago*, 385 Ill. App. 3d at 960.

¶ 45      In holding that *res judicata* was not applicable, the court in *City of Chicago* relied on various cases, including *County of Wabash v. Partee*, 241 Ill. App. 3d 59 (1993). At issue in *County of Wabash* was whether two attempts to acquire the same parcel of property involved the same cause of action for purposes of *res judicata*. In that case, the City of Mount Carmel sought to condemn land outside of its municipal limits to construct a highway so that traffic going to a nearby college could bypass Mount Carmel's congested downtown area. The Illinois Supreme Court affirmed the dismissal of Mount Carmel's condemnation action because the subject property was not substantially adjacent and contiguous to the incorporated parts of the municipality, as required by section 11-61-1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, ¶ 11-61-1). See *City of Mount Carmel v. Partee*, 74 Ill. 2d 371 (1979). Several years later, Mount Carmel and Wabash County (Wabash) entered into an intergovernmental agreement whereby Mount Carmel and Wabash exchanged certain property so that Wabash could complete a county highway. The property involved in

- 13 -

the intergovernmental agreement was the same property involved in Mount Carmel's condemnation action. After negotiations to acquire the property failed, Wabash filed a complaint for condemnation pursuant to section 5-801 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, ¶ 5-801). The defendants filed a traverse and motion to dismiss, citing several grounds for dismissal, including *res judicata* as a result of the supreme court's ruling in the prior lawsuit. The trial court denied the traverse and motion to dismiss, and the defendants appealed.

¶ 46    On appeal, the reviewing court also rejected the defendants' *res judicata* argument. *County of Wabash*, 241 Ill. App. 3d at 64-66. The court concluded that the only element of *res judicata* present was a final judgment on the merits–the earlier ruling by the supreme court. *County of Wabash*, 241 Ill. App. 3d at 64. With respect to an identity of causes of action, the court noted that the issue before the supreme court in the prior action was "whether [Mount Carmel] had the right to condemn [the defendants'] land which was not contiguous to the city under the applicable section[s] of the Illinois Municipal Code," while the controlling issue in the second action was "whether *** Wabash is authorized to condemn [the defendants'] land under [the applicable] section *** of the Illinois Highway Code." *County of Wabash*, 241 Ill. App. 3d at 65. The court further noted that in the second action, unlike in the first lawsuit, neither the jurisdiction of the city nor the location of the property in relation to the city was at issue and that the only commonality between the two cases was the defendants and the property. *County of Wabash*, 241 Ill. App. 3d at 65-66.

¶ 47    A similar issue was also presented in *People ex rel. Cherry Valley Fire Protection District v. City of Rockford*, 122 Ill. App. 2d 272 (1970). There, the City of Rockford sought to annex certain property. The annexation ordinance was found to be invalid because (1) Rockford did not properly notify the plaintiff and (2) the property sought to be annexed was not contiguous to Rockford. Thereafter, Rockford enacted a second annexation ordinance, in which it properly notified the plaintiff, covering the same territory plus one additional lot. The plaintiff challenged the second annexation ordinance, contending, among other things, that the judgment in the first lawsuit barred the second action, based on *res judicata*. The reviewing court rejected the plaintiff's claim, finding the absence of identity of causes of action between the two lawsuits. *People ex rel. Cherry Valley Fire Protection District*, 122 Ill. App. 2d at 274-75. The court explained that the deficiencies identified with the first annexation ordinance–improper notice and lack of contiguity–were not at issue in the second action. *People ex rel. Cherry Valley Fire Protection District*, 122 Ill. App. 2d at 274. The court also remarked that, if it were to determine that *res judicata* applied, "it would mean that this territory could never be annexed to the City of Rockford." *People ex rel. Cherry Valley Fire Protection District*, 122 Ill. App. 2d at 274.

¶ 48    In light of the foregoing cases, we conclude that the two lawsuits in this case do not share an identity of causes of action, because they are based upon different sets of operative facts. The second condemnation action is based upon the 2011 Ordinance whereas the first condemnation action was based upon the 2010 Ordinance. The 2010 Ordinance provided for the construction of sanitary sewers in the Oak Crest Sanitary Sewer Area and provided for a special assessment to pay for the project. Plaintiff's first condemnation action was dismissed after the trial court concluded that the 2010 Ordinance neither stated that a taking of defendant's property was necessary nor described the portion of defendant's property to be taken. In an attempt to cure these deficiencies, plaintiff enacted the 2011 Ordinance, which

- 14 -

states that an easement across defendant's property is necessary, incorporates a description of defendant's property by reference, provides that plaintiff's attempts to negotiate for the easement have been unsuccessful, and authorizes plaintiff to initiate condemnation proceedings to acquire the defendant's property. In other words, the 2010 Ordinance's deficiencies identified by the trial court in the first condemnation action were not at issue in the second condemnation action. See *City of Chicago*, 385 Ill. App. 3d at 960; *County of Wabash*, 241 Ill. App. 3d at 65-66; *People ex rel. Cherry Valley Fire Protection District*, 122 Ill. App. 2d at 274. Thus, *res judicata* does not bar the second condemnation action.[1]

¶ 49                                        D. Traverse

¶ 50    Next, defendant argues that the trial court erred in denying its traverse and motion to dismiss. A traverse is a method by which a party objects to a condemning entity's authority to condemn. *Forest Preserve District*, 339 Ill. App. 3d at 250. "When a complaint to condemn is traversed, the trial court may determine all questions raised regarding the condemnor's right to condemn the property." *Forest Preserve District*, 339 Ill. App. 3d at 250. In a traverse, the burden of proof shifts to the condemnor to prove the disputed allegations. *Forest Preserve District*, 339 Ill. App. 3d at 250. If the condemnor fails to sustain its burden, the action will be dismissed. *Forest Preserve District*, 339 Ill. App. 3d at 250.

¶ 51    Defendant initially argues that the trial court erred in denying its traverse and motion to dismiss because plaintiff failed to properly invoke its power of eminent domain. According to defendant, in order to properly invoke its eminent-domain power, sections 22a.5 and 22a.6 of the Sanitary Act (70 ILCS 2405/22a.5, 22a.6 (West 2010)) required plaintiff to promulgate an ordinance that both approves the underlying project and resolves to take defendant's land for the project. Plaintiff responds that it properly exercised its eminent-domain power pursuant to sections 8 and 15 of the Sanitary Act (70 ILCS 2405/8, 15 (West 2010)).

¶ 52    Section 8 of the Sanitary Act (70 ILCS 2405/8 (West 2010)) provides that a sanitary district "may acquire by purchase, condemnation, or otherwise all real and personal property, right of way and privilege, either within or without its corporate limits that may be required for its corporate purposes." As the parties' arguments suggest, the Sanitary Act provides various methods for a sanitary district to acquire property by condemnation.

¶ 53    Plaintiff cites section 15 of the Sanitary Act (70 ILCS 2405/15 (West 2010)). That section provides in relevant part:

---

[1]Defendant also argues that *res judicata* bars the second condemnation action because plaintiff "has not satisfied the statutory conditions precedent to exercise the eminent-domain power." More precisely, defendant contends that plaintiff "has not resolved to construct the Oak Crest project and to take [defendant's] land for that project in one and the same ordinance," as required by the Sanitary Act. See 70 ILCS 2405/22a.6 (West 2010). According to defendant, in the absence of a single ordinance both authorizing the Oak Crest project and resolving to take defendant's land therefor, the second condemnation action is barred by the trial court's judgment in the first condemnation action. This argument was presented in defendant's section 2-619(a)(4) motion to dismiss. However, we are not sure that this states a *res judicata* issue. To be sure, the alleged invalidity of the 2011 Ordinance could constitute a viable defense to the merits of the second condemnation action. Yet, it is not clear to us why this would constitute *res judicata* given the fact that the first and second condemnation actions are based on two distinct ordinances and therefore do not share an identity of causes of action.

"Whenever the board of trustees of any sanitary district shall pass an ordinance for the making of any improvement which such district is authorized to make, the making of which will require that private property should be taken or damaged, such district may cause compensation therefor to be ascertained, and may condemn and acquire possession thereof in the same manner as nearly as may be as is provided for the exercise of the right of eminent domain under the Eminent Domain Act ***." 70 ILCS 2405/15 (West 2010).

Section 10-5-10(a) of the Eminent Domain Act (735 ILCS 30/10-5-10(a) (West 2010)) provides that, when a public entity has the power to take property for public use, the entity "may apply to the circuit court of the county where the property or any part of the property is situated, by filing with the clerk a complaint." Section 10-5-10(a) of the Eminent Domain Act further provides that the complaint "shall set forth, by reference, (i) the complainant's authority in the premises, (ii) the purpose for which the property is sought to be taken or damaged, (iii) a description of the property, and (iv) the names of all persons interested in the property as owners or otherwise, as appearing of record, if known, or if not known stating that fact; and shall pray the court to cause the compensation to be paid to the owner to be assessed." 735 ILCS 30/10-5-10(a) (West 2010). The Eminent Domain Act then outlines additional procedures for the condemnation action.

¶ 54    In contrast, sections 22a.5 and 22a.6 of the Sanitary Act (70 ILCS 2405/22a.5, 22a.6 (West 2010)), the provisions cited by defendant, are part of an "alternative special assessment procedure." See 70 ILCS 2405/22a.1 *et seq.* (West 2010). Section 22a.5 provides in pertinent part that "[a]ll ordinances for local improvements to be paid for wholly or in part by special assessment *** shall originate with the committee of local improvements." 70 ILCS 2405/22a.5 (West 2010). Section 22a.5 further provides:

"The committee may request the board's engineer to prepare preliminary plans and specifications for the proposed improvement together with an estimate of the cost of the improvement (omitting land to be acquired), itemized to the satisfaction of the committee and certified by the engineer's signature to be an estimate which does not exceed the probable cost of the proposed improvement, including the lawful expenses attending the improvement. Upon presentation of such preliminary plans and specifications and the estimate of cost, the committee may adopt a resolution describing the proposed improvement and scheduling a public hearing before the committee to consider whether such scheme shall be recommended to the board. The resolution may provide that the plans and specifications for the proposed improvement be made part of the resolution by reference to plans and specifications adopted or published by the State of Illinois or any political subdivision or agency thereof. Whenever the proposed improvement requires that private or public property be taken or damaged, the resolution shall describe the property proposed to be taken or damaged for that purpose. The committee shall also fix in the resolution a place, day and time for a public hearing thereon." 70 ILCS 2405/22a.5 (West 2010).

Section 22a.6 provides what happens at the public hearing and afterward:

"At the time and place fixed in the specified notice for the public hearing, the committee of local improvements shall meet and hear the representations of any person desiring to be heard on the subject of the necessity for the proposed improvement, the nature thereof or the cost as estimated. *** The committee may

adopt a second or further resolution abandoning the proposed scheme or adhering thereto, or changing, altering or modifying the extent, nature, kind, character and estimated cost, provided the change does not increase the estimated cost of the improvement to exceed 20% of the estimate set forth in the mailed notice of the public hearing without a further public hearing pursuant to a new mailed notice given in like manner as the first. Thereupon, if the proposed improvement is not abandoned, the committee shall have an ordinance prepared therefor to be submitted to the board. This ordinance shall prescribe the nature, character, locality and description of the improvement and shall provide whether the improvement shall be made wholly or in part by special assessment *** of benefited property and may provide that plans and specifications for the proposed improvement be made part of the ordinance by reference to plans and specifications on file in the office of the district's engineer or to plans and specifications adopted or published by the State of Illinois or any political subdivision or agency thereof. If the improvement is to be paid in part only by special assessment ***, the ordinance shall so state. If the improvement requires the taking or damaging of property, the ordinance shall so state, and the proceedings for making just compensation therefor shall be as described in Sections 9-2-14 through 9-2-37 of the Illinois Municipal Code, as now or hereafter amended." 70 ILCS 2405/22a.6 (West 2010).

¶ 55     Sections 9-2-14 through 9-2-37 of the Illinois Municipal Code (65 ILCS 5/9-2-14 to 9-2-37 (West 2010)) outline a procedure for taking property and making just compensation. Section 9-2-15 of the Illinois Municipal Code (65 ILCS 5/9-2-15 (West 2010)) provides that such proceedings are commenced by filing a petition "praying that steps may be taken to ascertain the just compensation to be made for private or public property to be taken or damaged for the improvement or purpose specified in the ordinance, and to ascertain what property will be benefited by the improvement, and the amount of those benefits." Following other sections outlining additional procedures, section 9-2-34 of the Illinois Municipal Code (65 ILCS 5/9-2-34 (West 2010)) provides that a final judgment rendered in proceedings for making just compensation "shall be a lawful and sufficient condemnation of the land or property to be taken, upon the payment of the net amount of the finding."

¶ 56     Turning to the facts in this case, we conclude that plaintiff was not exercising its condemnation authority under sections 22a.5 and 22a.6 of the Sanitary Act when it enacted the 2011 Ordinance and filed the 2012 Complaint. Rather, as the trial court found, plaintiff was exercising its authority under section 15 of the Sanitary Act. Significantly, our review of the record establishes that the 2011 Ordinance was not promulgated pursuant to the procedure set forth in sections 22a.5 and 22a.6. For example, there is no indication that, prior to the adoption of the 2011 Ordinance, plaintiff's Committee adopted a resolution, scheduled a public hearing to consider whether to adopt the resolution, adopted a second resolution, and prepared an ordinance to submit to plaintiff's board of trustees. See 70 ILCS 2405/22a.5, 22a.6 (West 2010). Moreover, as noted above, section 22a.6 requires that proceedings for making just compensation "shall be as described in Sections 9-2-14 through 9-2-37 of the Illinois Municipal Code." 70 ILCS 2405/22a.6 (West 2010). Yet, the 2012 Complaint does not comport with these provisions of the Illinois Municipal Code. The 2012 Complaint, for instance, does not ask the court "to ascertain what property will be benefited by the improvement, and the amount of those benefits," as section 9-2-15 of the Illinois Municipal

Code requires for a petition filed pursuant to this procedure. See 65 ILCS 5/9-2-15 (West 2010).

¶ 57    In contrast, section 15 of the Sanitary Act provides for the exercise of the right of condemnation under the Eminent Domain Act. As noted above, section 10-5-10 of the Eminent Domain Act (735 ILCS 30/10-5-10 (West 2010)) provides that a complaint for condemnation "shall set forth, by reference, (i) the complainant's authority in the premises, (ii) the purpose for which the property is sought to be taken or damaged, (iii) a description of the property, and (iv) the names of all persons interested in the property as owners or otherwise, as appearing of record, if known, or if not known stating that fact; and shall pray the court to cause the compensation to be paid to the owner to be assessed." The 2012 Complaint sets forth all of these elements.

¶ 58    First, the initial element, "the complainant's authority in the premises" refers to statutory authority. *Goldman v. Moore*, 35 Ill. 2d 450, 452-53 (1966). Here, the 2012 Complaint cites section 15 of the Sanitary Act as its statutory authority. Second, the 2012 Complaint states that plaintiff is "now engaged in acquiring permanent sanitary sewer easements and temporary construction easements for the construction of a sanitary sewer trunk line" for which it is necessary to acquire defendant's property. Thus, it specifies the purpose for which defendant's property is sought to be taken. Third, the 2012 Complaint describes by reference the property sought to be taken. Fourth, the 2012 Complaint names all persons interested in the property as owners or otherwise, as appearing of record, if known, or if not known stating that fact. Finally, the 2012 Complaint prays the court to cause the compensation to be paid to defendant. Based on these considerations, we find that the trial court properly determined that plaintiff was proceeding under section 15 of the Sanitary Act and not under the alternative special assessment procedure outlined in sections 22a.1 through 22a.55 of the Sanitary Act.

¶ 59    Of course, the consequence of plaintiff's decision to proceed pursuant to section 15 of the Sanitary Act means that it cannot use the special assessment authorized by the 2010 Ordinance. Instead, plaintiff must use other funds to pay for the taking of defendant's property and for the construction of the trunk line. If plaintiff chooses to pay for the taking of defendant's property or for the trunk line with a special assessment, it will have to follow the procedure set forth in sections 22a.1 through 22a.55 of the Sanitary Act, including the ordinance and notice requirements set forth in sections 22a.5 and 22a.6.

¶ 60    Alternatively, defendant argues that it was error for the trial court to deny the traverse and motion to dismiss because there is no evidence that the Oak Crest project is necessary. Plaintiff responds that defendant misapprehends its burden at the trial on the traverse. According to plaintiff, the traverse challenged its authority to take the easements. As such, plaintiff reasons, it was obligated to make a *prima facie* case for the necessity of only the *easements*, not "the improvement." Plaintiff further asserts that, even if the necessity of "the improvement" itself were at issue in the traverse, there was ample evidence to support that as well.

¶ 61    We need not decide whether plaintiff was required to make a *prima facie* case for the necessity of both the Oak Crest project and the easements. In its reply brief, defendant states that it does not challenge that plaintiff established the necessity of the easements. Moreover, we agree with plaintiff that, even if the necessity of "the improvement" itself were at issue in the traverse, there was ample evidence to support such a finding.

¶ 62    As noted above, when a condemnation action is filed, a landowner may challenge the lawsuit by filing a traverse and motion to dismiss. *Forest Preserve District*, 339 Ill. App. 3d at 250. When such a motion is filed, the condemning authority bears the initial burden of establishing a *prima facie* case as to any disputed allegations. *City of Chicago*, 385 Ill. App. 3d at 965. The introduction of a valid ordinance reciting the necessity of the taking establishes a *prima facie* case authorizing the acquisition of the property in question. *City of Chicago*, 385 Ill. App. 3d at 965; see *Trustees of Schools of Township 37 North, Range 11, Cook County v. Sherman Heights Corp.*, 20 Ill. 2d 357, 359 (1960). To rebut a *prima facie* case of necessity, the opposing party must produce evidence of an abuse of discretion by the condemning authority. *Department of Transportation ex rel. People v. Callender Construction Co.*, 305 Ill. App. 3d 396, 405 (1999).

¶ 63    The term "necessity," as it relates to a condemnation action, does not mean "indispensable" or "an absolute necessity." (Internal quotation marks omitted.) *County Board of School Trustees v. Batchelder*, 7 Ill. 2d 178, 181 (1955). Rather, it is construed to mean expedient, reasonably convenient, or useful to the public. *County Board of School Trustees*, 7 Ill. 2d at 181. Here, the Oak Crest project was authorized by the 2010 Ordinance. Although the 2010 Ordinance does not explicitly state that the Oak Crest project is necessary, it does so tacitly. In particular, the 2010 Ordinance authorizes the extension of sanitary sewer service, which is clearly useful to the public. See *City of Nokomis v. Sullivan*, 14 Ill. 2d 417, 421-22 (1958) (noting the health dangers involved in the unsanitary disposition of human excrement). The burden then shifted to defendant to introduce evidence that plaintiff abused its discretion. Defendant does not indicate what evidence it produced to meet this burden.

¶ 64    However, even if we were to interpret the 2010 Ordinance as lacking a statement of necessity, this would not necessarily be fatal as long as plaintiff made a showing of necessity at the hearing on the traverse. *People ex rel. Director of Finance v. Young Women's Christian Ass'n of Springfield*, 86 Ill. 2d 219, 239-40 (1981); *City of Oakbrook Terrace v. La Salle National Bank*, 186 Ill. App. 3d 343, 350 (1989). Here, in ruling on defendant's traverse and motion to dismiss, the trial court determined that the Oak Crest project was "a necessary project" because it served a public purpose, *i.e.*, it furthered the health, welfare, and sanitation needs of the residents of the Oak Crest subdivision. The evidence supports this finding. In particular, Carroll, plaintiff's engineering manager, testified that the Oak Crest subdivision is currently served by septic systems, most of which are more than 40 years old. Carroll related that these septic systems are regulated by the health department, which prefers sewer over septic systems, for health and safety reasons. Further, he noted that health department regulations require residents to connect to sanitary sewer service if a septic system fails or needs repair and sanitary sewer service is available within 200 feet of the property. In addition, Hood, a 13-year resident of the Oak Crest subdivision and the president of the homeowner's association, testified regarding the problems that residents of the Oak Crest subdivision have encountered with their septic systems. He further noted that the homeowner's association explored other means of sanitary waste disposal but determined that they were not feasible. Defendant presented no evidence to the contrary. Accordingly, we find that the trial court did not err either in finding that the Oak Crest project was a necessary project or in denying defendant's traverse and motion to dismiss.

¶ 66 Defendant also challenges the award of compensation. According to defendant, in addition to compensation for the value of the easements, it has a "right to compensation for its property that [plaintiff] will damage in the course of digging a sewer across its land." Essentially, defendant seeks compensation for the costs of relandscaping its property after the proposed trunk line is installed. Defendant further contends that the trial court erred in excluding Bennett's testimony regarding the landscaping estimate.

¶ 67 At the outset, we find that defendant does not support its claim with any cogent analysis. Instead, defendant merely refers us to a section of the Illinois Constitution (Ill. Const. 1970, art. I, § 15 ("Private property shall not be taken or damaged for public use without just compensation as provided by law.")) and two sections of the Sanitary Act (70 ILCS 2405/15 (West 2010) ("Whenever *** any sanitary district shall pass an ordinance for the making of an improvement ***, the making of which will require that private property should be taken or damaged, such district may cause compensation therefor to be ascertained, and may condemn and acquire possession thereof in the same manner as nearly as may be as is provided for the exercise of the right of eminent domain under the Eminent Domain Act."); 70 ILCS 2405/22a.6 (West 2010) ("If the improvement requires the taking or damaging of property, *** the proceedings for making just compensation therefor shall be as described in *** the Municipal Code ***.")). Citing to *Warner/Elektra/Atlantic Corp. v. County of Du Page*, 991 F.2d 1280, 1285 (7th Cir. 1993), defendant then states, "[n]othing in the notion of 'property,' whether under the Fifth Amendment to the federal Constitution or in Illinois's constitutional and statutory provisions governing condemnation, limits condemnation to real property" and concludes that it was error "to deny compensation for the damage that [plaintiff] will wreak on [defendant's] property as it digs a ditch through the easement." Defendant offers no explanation of how the foregoing authorities apply to this case, and it cites no case law awarding compensation for the type of damage at issue. Under these circumstances, defendant has forfeited this claim. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (requiring the appellant's brief to include argument that shall contain "the contentions of the appellant *and the reasons therefor*" (emphasis added)); see also *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 208 (2008) (noting that the failure to support a proposition with analysis or authority results in forfeiture of the issue on appeal, as it is not the responsibility of the reviewing court to take on the task of research and reasoning).

¶ 68 Forfeiture notwithstanding, we are not persuaded that the compensation award was in error. It has been held that allowing "costs to cure" as a separate element of damage in a condemnation case is "manifestly improper." *Department of Transportation v. First Bank of Schaumburg*, 260 Ill. App. 3d 490, 498 (1992). Rather, "the measure of damages to the remainder is the difference between its fair market value before the acquisition and its fair market value after the acquisition." *Department of Transportation*, 260 Ill. App. 3d at 498; see also *Department of Public Works & Buildings v. Hubbard*, 363 Ill. 99, 101-02 (1936). Thus, "[t]he cost of rehabilitation may be considered only in determining a reduction of the market value of the whole" (*Department of Transportation*, 260 Ill. App. 3d at 495 (citing *City of Freeport v. Fullerton Lumber Co.*, 98 Ill. App. 3d 218, 223 (1981)); see also *Department of Transportation v. Galley*, 12 Ill. App. 3d 1072, 1077-78 (1973)), and, while "an expert valuation witness may be permitted to state the factors considered in forming an opinion of the value of the remainder, including the costs of rehabilitation, [the expert] may

not testify as to the specific figures applied for those costs" (*Department of Transportation*, 260 Ill. App. 3d at 495).

¶ 69 In this case, Magdziarz, plaintiff's valuation witness, testified that the fair cash value of the permanent and temporary construction easements is $1,350. Magdziarz explained that in calculating these figures he assessed the value of the property as a whole both before and after the impressment of the permanent easement. Magdziarz testified that the fair cash value of the entire property before the impressment of the permanent easement is $650,000, while the fair cash value of the property after the impressment of the permanent easement would be $648,800, or a reduction of $1,200. Magdziarz further testified that the fair cash value of the temporary construction easement would be $150. Defendant cross-examined Magdziarz but did not ask any questions about whether the costs of rehabilitation were factored into his valuations. Instead, defendant sought to introduce the testimony of Bennett, a resident in the condominium complex and a former officer in defendant's homeowner's association.

¶ 70 In particular, Bennett was called to testify regarding a landscape architect's estimate to restore defendant's property after installation of the trunk line. Plaintiff objected to Bennett's testimony on the grounds that it was (1) irrelevant to the issue of the easements' value and (2) hearsay. We conclude that the trial court properly sustained plaintiff's objection on both grounds. First, as the authorities discussed above demonstrate, the evidence defendant sought to introduce via Bennett was irrelevant because it involved rehabilitation costs as a separate element of damages.

¶ 71 Furthermore, Bennett's testimony was clearly hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). For purposes of the foregoing definition, a "statement" is "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Ill. R. Evid. 801(a) (eff. Jan. 1, 2011). Hearsay statements are inadmissible unless they fall within an exception to the rule against hearsay. Ill. R. Evid. 802 to 804 (eff. Jan. 1, 2011); *People v. Temple*, 2014 IL App (1st) 111653, ¶ 58. In this case, defendant sought to admit by way of Bennett's testimony an out-of-court statement–the landscaper's written estimate–for the truth of the matter asserted–the cost of relandscaping defendant's property. Moreover, defendant does not assert that an exception to the rule against hearsay applies in this case. Instead, relying on *City of Freeport v. Fullerton Lumber Co.*, 98 Ill. App. 3d 218 (1981), defendant insists that an owner may testify regarding damage to property. Defendant cites the following language from *City of Freeport*: "It has been repeatedly held that the owner of property, *if at all qualified*, may testify as to value." (Emphasis added.) *City of Freeport*, 98 Ill. App. 3d at 222. We find defendant's reliance on this passage misplaced, as defendant does not indicate how Bennett is qualified to testify regarding landscaping costs.

¶ 72                                    III. CONCLUSION

¶ 73 For the reasons set forth above, we affirm the judgment of the circuit court of Winnebago County.

¶ 74       Affirmed.